[No. 48378-7.   En Banc.   September 16, 1982.]

THE STATE OF WASHINGTON, *Appellant,* v. NOVA RICHARD SMITH, *Respondent.*

*C. J. Rabideau, Prosecuting Attorney,* and *Pamela Cameron, Deputy,* for appellant.

*Olson, Olson & Hevel,* by *Vic L. Vanderschoor,* for respondent.

DIMMICK, J.—Assault victim, Rachael Conlin, wrote out a statement on a form supplied by a detective of the Pasco Police Department, which contained *Miranda* warnings, in which she named Nova Smith (defendant) as her assailant. She signed under oath with penalty of perjury before a notary. At Smith's trial a month later, she named another man as her attacker. The trial court allowed her prior inconsistent statement to be used as substantive evidence ruling it was not hearsay under Rule of Evidence 801(d)(1)(i). The jury found Smith guilty of assault in the second degree. Thereafter, the judge granted a new trial, reasoning that ER 801(d)(1)(i) did not authorize the statement's admissibility as it was not given in a "proceeding". The State appealed and we accepted certification from the Court of Appeals.

The issue certified for our determination is:

> Whether ER 801(d)(1)(i) permits the admission of a trial witness' prior inconsistent statement, as substantive evidence, when that statement was made as a written complaint (under oath subject to penalty of perjury) to investigating police officers.

While declining to adopt a general rule at this time, we hold that under the facts of this case the statement was admissible as substantive evidence. We therefore reverse the trial court's granting of a new trial and reinstate the jury verdict.

## I

At approximately 6:30 a.m. on July 10, 1980, Rachael Conlin was cruelly and severely assaulted in a room at the Double D Motel, Pasco, Washington, which she kept for work–related activities. She was struck in the face, beaten with a wire coat hanger, a belt, and a pipe, kicked several times and pulled back into the room by her hair on her attempt to escape. She received a cracked nose, bruises, black eyes, and required several stitches on her face. At 8 a.m. a police officer was called to the hospital and Conlin stated defendant had assaulted her, she was afraid, and did not know what to do. She was advised that nothing could be done unless she was willing to testify in court. About noon the officer recontacted Conlin and asked her if she wanted to give a statement concerning the incident. She came to the police station and talked with a detective indicating she was willing to press charges and testify in court. She understood that by giving a voluntary sworn statement criminal action against defendant was likely. She thereupon wrote, in her own words, a statement describing the details of the assault and identified the defendant as her assailant. She signed each page and the detective signed as a witness on pages 2, 3, and 4 of the statement. The detective then took her before a notary and read her the affidavit portion and oath. She reread the affidavit and oath and signed the affidavit. The notary subscribed the jurat and seal to Conlin's statement.

That same day, Conlin, chased by defendant, ran into her manager's apartment screaming for help. Police were called when defendant, by force, took Conlin's car keys and departed.

At trial Ms. Conlin testified to the same facts regarding her assault as her original statement indicated, except for the startling deviation that her assailant was a Mr. Gomez, and that defendant had come to her aid. She freely admitted giving the sworn, voluntary statement to the detective and telling the officer at the hospital that defendant had assaulted her. She testified that she was upset with defend-

ant over a fight the night before and blamed him for her having to stay in the motel room overnight with Gomez rather than in her apartment where defendant also lived. She further testified that she had lived with defendant both before and after the assault, and that she had left $150 for him at the jail for cigarettes, although she denied he was her pimp.

The prosecuting attorney was surprised at trial by Conlin's change in the identification of her assailant and introduced the written statement at issue for impeachment purposes. The State then moved to have it admitted as substantive evidence also, as it was apparently the only evidence that identified defendant as the perpetrator of the assault.

As previously noted, the trial judge ruled that the statement was admissible but then reconsidered and granted a new trial declaring ER 801(d)(1)(i) did not apply.

## II

ER 801(d)(1)(i) provides as follows:

**(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—

(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross–examination concerning the statement, and the statement is (i) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, *or other proceeding,* or in a deposition . . .

(Last italics ours.)

We are here concerned with the interpretation of the words "other proceeding" as used in that rule. Washington's rule is taken verbatim from Fed. R. Evid. 801-(d)(1)(A). Accordingly, it is proper to look at the federal rule's history and purposes in interpreting its provisions. In fact, the comment to the Washington rule ER 801 provides that the rule "conforms state law to federal practice."

The rule as adopted by the United States Supreme Court and passed by the Senate adopted the minority position allowing all prior inconsistent statements to be used as

substantive evidence. The House Subcommittee disagreed with this unrestricted version and sought to limit the rule by requiring that the statement be made under oath, subject to penalty for perjury, and given at a "trial, hearing, deposition, or before a grand jury." These requirements were to assure reliability. The House Committee on the Judiciary added that the original statement must have been subject to cross examination and deleted the reference to grand jury proceedings. The Advisory Committee objected, asserting that an in–court cross examination was adequate to discern the truthfulness of the prior statement. The committee finally reached a compromise resulting in the rule in question. One report in the House noted that the rule adopted covers statements before a grand jury. However, the term "other proceeding" was not discussed. For an in–depth discussion of the rule's history, see 4 D. Louisell & C. Mueller, *Federal Evidence* 3–18 (1980); Blakey, *Substantive Use of Prior Inconsistent Statements Under the Federal Rules of Evidence,* 64 Ky. L.J. 3 (1975); Comment, *Federal Rule of Evidence 801(d)(1)(A)—Prior Inconsistent Statements—Scope of the Term "Other Proceeding"— United States v. Castro–Ayon, 537 F.2d 1055 (9th Cir. 1976),* 10 Loy. L.A. L. Rev. 497 (1977); *United States v. Castro–Ayon: An Interpretation of Federal Rule of Evidence 801(d)(1)(A),* 10 Sw. U. L. Rev. 985 (1978).

It is well accepted that "other proceeding" includes grand jury proceedings. *See* D. Louisell & C. Mueller, at 420; Annot., *What is "Other Proceeding" Under Rule 801-(d)(1)(A) of Federal Rules of Evidence, Excepting From Hearsay Rule Prior Inconsistent Statement Given "At a Trial, Hearing, or Other Proceeding",* 37 A.L.R. Fed. 855 (1978). The Ninth Circuit extended this interpretation and upon reviewing the rule's legislative history it determined that a tape–recorded statement made under oath and taken in an immigration investigation was admissible. *United States v. Castro–Ayon,* 537 F.2d 1055 (9th Cir.), *cert. denied,* 429 U.S. 983 (1976). The court determined that the Legislature intended the term "other proceeding" to be

open–ended and not restricted to grand jury proceedings. The court also compared grand jury proceedings to immigration proceedings and found enough similarities between the two to admit the statements. The court specifically added: "We do not hold, as the question is not before us, that every sworn statement given during a police–station interrogation would be admissible." 537 F.2d at 1058.

We likewise decline to answer the issue broadly. We do not interpret the rule to always exclude[1] or always admit[2] such affidavits. The purposes of the rule and the facts of each case must be analyzed. In determining whether evidence should be admitted, reliability is the key. In many cases, the inconsistent statement is more likely to be true than the testimony at trial as it was made nearer in time to the matter to which it relates and is less likely to be influenced by factors such as fear or forgetfulness. One commentator has addressed the question of admissibility as follows:

Inquiry into what other statements are encompassed by

---

[1]Some federal courts would apparently exclude all affidavits made to investigating officials as substantive evidence under Fed. R. Evid. 801(d)(1)(A). Those courts, however, have not dealt with facts identical to the ones before us. *E.g.*, *United States v. Livingston*, 661 F.2d 239 (D.C. Cir. 1981) (A postal inspector asked the witness questions, took notes, typed a statement based on the witness' responses and asked her to read and sign it. At trial the witness gave inconsistent testimony and either did not recall making the statements to the inspector or denied them.); *United States v. Ragghianti*, 560 F.2d 1376 (9th Cir. 1977) (The Government's witness changed her story on the stand and did not recall making the prior inconsistent statement. The circumstances surrounding the prior inconsistent statement were not set forth except that it was given to an FBI agent, the investigating officer.).

[2]At least one other state court which has adopted Fed. R. Evid. 801(d)(1)(A) would admit an affidavit signed by a witness any time it is taken under oath before an official who is authorized to hear evidence and administer oaths. *Slavens v. State*, 1 Ark. App. 245, 614 S.W.2d 529 (1981). Appellant relies heavily upon *State v. Maestas*, 92 N.M. 135, 584 P.2d 182 (Ct. App. 1978). The New Mexico court would seemingly always admit prior inconsistent statements such as the one made in the instant case. New Mexico, however, has adopted a different rule of evidence from Washington's which allows all prior inconsistent statements to be admitted as substantive evidence regardless of whether they were taken in a proceeding or under oath.

the Rule should be informed by the two purposes Congress had in mind in narrowing the provision originally proposed by the Court. The first was to remove doubt as to the making of the prior statement. . . . The second purpose was to provide at least the minimal guarantees of truthfulness which an oath and the circumstance of a formalized proceeding tend to assure. Clearly, however, the prior statement need not have been subject to cross-examination at the time made, for Congress was satisfied to rely upon delayed cross-examination of the declarant at trial to expose error or falsehood in the statement.

(Footnotes omitted.) D. Louisell & C. Mueller, *supra* § 419, at 169–71.

Here, there was no question that the statement was made since Ms. Conlin testified to that fact. Minimal guaranties of truthfulness were met since the statement was attested to before a notary, under oath and subject to penalty for perjury. Additionally, the witness wrote the statement in her own words. The jury, seeing Rachael Conlin on the stand, under oath, and hearing her explanation of the inconsistent statement while subject to cross examination, was in a position to determine which statement was true.

### III

Another factor to be considered is the original purpose of the sworn statement. It was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause, thus allowing charges to be filed against defendant. The four methods are:

(1) filing of an information by the prosecutor in superior court (*see* Const. art. 1, § 25, and RCW 10.37.026); (2) grand jury indictment (*see* RCW 10.[27]); (3) inquest proceedings (*see* RCW 36.24); and (4) filing of a criminal complaint before a magistrate (*see* RCW 10.16).

*State v. Jefferson*, 79 Wn.2d 345, 347, 485 P.2d 77 (1971).

The first method, the one used here, is usually the result of police investigations into alleged criminal activity, and the taking of statements from witnesses and the presentment of them to the prosecuting attorney. The prosecuting attorney then exercises discretion in finding probable cause

and files an information. "Other proceeding" under the rule would clearly cover the other three methods of finding probable cause listed above. That is, if the witness gave a statement, necessarily under oath to a grand jury, in an inquest proceeding or to a magistrate, that statement would be admissible as substantive evidence. Since the purpose of the statements in the first method is the same as the other three methods, that is determining probable cause, it should also be covered by the rule in an appropriate case such as we have before us.

To sum up, each case depends on its facts with reliability the key. Here, the complaining witness–victim voluntarily wrote the statement herself, swore to it under oath with penalty of perjury before a notary, admitted at trial she had made the statement and gave an inconsistent statement at trial where she was subject to cross examination. ER 801(d)(1)(i) is satisfied under the totality of these circumstances.

We therefore remand to the trial court with instructions to reinstate the verdict of the jury and sentence defendant thereon.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, WILLIAMS, DORE, and PEARSON, JJ., concur.

STAFFORD, J., concurs in the result.