498 So.2d 1280 (1986)
Jasper TISDALE, Appellant,
v.
STATE of Florida, Appellee.
No. 84-1901.
District Court of Appeal of Florida, Fourth District.
October 29, 1986.
Rehearing Denied and Stay Granted January 15, 1987.
*1281 Richard L. Jorandby, Public Defender, and Louis G. Carres, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge, for the Court En Banc.
This case has been decided en banc, pursuant to the court's own motion, based upon the court's perception that the case is one of exceptional importance and that it is also necessary to maintain uniformity in the court's decisions.
Appellant, Jasper Tisdale, was convicted of leaving the scene of an accident involving the death of another person in violation of section 316.027(1)(2), Florida Statutes (1983). Tisdale has appealed the judgment of conviction and sentence, contending that the trial court erred in two respects: 1) in admitting the prior, out-of-court, inconsistent statement of a witness as substantive evidence at the trial; and 2) in violating the sentencing guidelines on the basis that he failed to set forth his reasons in writing and further that the oral reasons stated were insufficient to constitute clear and convincing reasons for departure.
Tisdale was charged with being the operator of an automobile that struck and killed a person on a bicycle and with leaving the scene of the accident. He denied operation of the car on the day in question, claiming the car had been stolen from him and that he spent the day drinking with friends. Two eyewitnesses to the accident led to the arrest of Tisdale; however, neither of those witnesses could identify him as the driver. Without detailing the evidence, suffice to say that there was incriminating circumstantial evidence that pointed to Tisdale's operation of the car. The most damning evidence, however, was in the sworn statement of Mattie Davis, taken at the police station some three weeks after the accident, in which she stated that she was a passenger in the car at the time of the accident. She further stated that Tisdale was driving faster than he should have been and, although she did not see him hit the victim, she heard the collision and saw a person flipped up in the air, who came down on the car. She stated that Tisdale kept going, then turned right and stopped, and she jumped out of his car with her baby and ran away.
At trial the state was allowed to call Mattie as a court witness because she recanted her prior statement and denied she was in the car. She explained her prior inconsistent statement, stating that the police had given her all the details of the accident and intimidated her into giving the story contained in her statement. As a result of Mattie's recantation, the court allowed the state to offer Mattie's inconsistent statement as substantive evidence over defense objection.
The evidentiary question presented by the admission of this evidence over defense *1282 objection is whether the sworn statement made by Mattie Davis in the police station some weeks after the accident was admissible as substantive evidence at a trial in which Mattie testified and recanted said statement. There appear to be two views concerning admissibility under this factual scenario. One view is that a proper construction of section 90.801(2)(a), Florida Statutes (1983), precludes admissibility of a sworn statement made in a police station setting, since that is not a "proceeding" within the meaning of the statute. This view is persuasively articulated by Judge Alan Schwartz for the Third District Court of Appeal in Delgado-Santos v. State, 471 So.2d 74 (Fla. 3d DCA 1985). The other view holds that the admissibility of such a statement depends upon the perceived reliability of its contents based upon the circumstances surrounding its preparation. This view is ably presented by the Supreme Court of Washington in State v. Smith, 97 Wash.2d 856, 651 P.2d 207 (1982). There is much to be said on behalf of each of those views; however, we believe the sounder one to be that espoused in Delgado-Santos because the analysis of the rule's background, together with the congressional dichotomy between House and Senate and the ultimate compromise giving rise to federal rule 801(d)(1)(A), seem to dictate a "bright line" construction rather than a case-by-case analysis of the circumstances surrounding the taking of the statement to determine reliability and thus admissibility. In the light of the background of the rule, keeping in mind that theretofore prior inconsistent statements were simply not admissible as substantive evidence, Martin v. United States, 528 F.2d 1157 (4th Cir.1975), and the efforts to limit the settings that were considered to offer sufficient protection to assure reliability, we believe Judge Schwartz's criticism of the case-by-case approach to this particular rule is well taken and, thus, we repeat it here:

Robinson [v. State, 455 So.2d 481 (Fla. 5th DCA 1984)] and, even more, Smith, which the fifth district followed and which is the only decision which actually permits the admission of a police statement under 801(d)(1)(A), purport to make the question turn on the "reliability" of the contents of the particular statement and of the conditions under which it was given. In our view, the basic flaw in this conclusion is that it finds no basis in the statute. While the legislature and Congress may have been ultimately concerned with the "reliability" of a particular statement, they sought to vindicate that concern only by establishing given and objective criteria as to the circumstances, including the kind of forum, under which it was given. And it is for the legislature, not the courts, to determine not only the policy to be promoted, but the means by which that end is to be achieved. 10 Fla.Jur.2d Constitutional Law § 147 (1979). By suggesting, without statutory authority, that the determination that the existence of a proceeding can depend upon what is said before it, the Robinson-Smith test of reliability[7] violates this basic principle.
In sum, we think that a "bright line" test is mandated by the statute: in this context, this means that a police interrogation either is or is not an "other proceeding."
[7] It should be noted, in contrast, that other provisions of the code explicitly render the court's assessment of the value of the particular item of evidence a condition of admissibility. See sec. 90.804(2)(c), Fla. Stat. (1981) ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible unless corroborating circumstances show the trustworthiness of the statement."); Maugeri v. State, 460 So.2d 975 (Fla. 3d DCA 1984).
In the absence of such a provision in 90.801(2)(a), the Robinson-Smith rationale, rendering a "reliable" statement admissible although there would otherwise be no "proceeding," would amount to the enactment of a catch-all or umbrella exception for the admission of trustworthy hearsay which does not fall within any of the specific exceptions. This principle is contained in the federal rules, 804(b)(5), but was pointedly not adopted in Florida.
471 So.2d at 79.
We hold that the prior inconsistent statement was not admissible as substantive evidence because it does not fall within the exception to the hearsay rule set forth in *1283 section 90.801(2)(a), Florida Statutes (1983), since the statement was not given at trial, hearing, or other proceeding or in a deposition; it was given at the police station. Furthermore, since the evidence in this case is not overwhelming, in view of the problems associated with the identification of Tisdale, resort to the harmless error rule is not appropriate.
The second point on appeal, having to do with the court's departure from the sentencing guidelines, is also a valid ground for reversal. However, because that point is now mooted by a reversal of the judgment of conviction we simply mention in passing that the reasons for departure should have been put in writing. State v. Boynton, 478 So.2d 351 (Fla. 1985). Furthermore, several of the grounds mentioned orally were insufficient, such as lack of remorse, failure to admit guilt, and the court's belief that the guidelines' presumptive sentence was insufficient punishment.
Accordingly, the judgment and sentence appealed from are reversed and the cause is remanded for a new trial.
By aligning ourselves with Delgado-Santos we recognize that our opinion conflicts with Robinson v. State, 455 So.2d 481 (Fla. 5th DCA 1984). Furthermore, we view the evidentiary question involved as one of great public importance. Therefore, we certify to the Supreme Court of Florida the following question:
IS THE SWORN INCONSISTENT STATEMENT OF A WITNESS MADE IN A POLICE STATION ADMISSIBLE AS A STATEMENT GIVEN IN AN "OTHER PROCEEDING" SO AS TO BE ADMISSIBLE AS SUBSTANTIVE EVIDENCE, PURSUANT TO SECTION 90.801(2)(a), FLORIDA STATUTES (1983), IN A SUBSEQUENT TRIAL OR JUDICIAL PROCEEDING AT WHICH THE WITNESS TESTIFIES AND IS SUBJECT TO CROSS EXAMINATION?
HERSEY, C.J., and ANSTEAD, LETTS, DELL, WALDEN, GUNTHER and STONE, JJ., concur.
GLICKSTEIN, J., dissents in part and concurs in part with opinion.
GLICKSTEIN, Judge, dissenting in part and concurring in part.
This case came before an assigned three regular judge panel here at the same time another case came before another panel, consisting of two judges of the court and an associate judge. The other case, Wilkie v. State, 498 So.2d 1288 (Fla.App. 1986) is now bound by the en banc decision of the court. It was proper, in my view, to en banc the present case. It was also fair, in my opinion, to leave the other case with the original panel to enable the associate judge, ineligible to participate in this en banc proceeding, the opportunity, should he wish, to express his views. It is good that the cases arose simultaneously, as the Wilkie decision would have represented the views of that panel's majority, but not that of the entire court. The basic issue involved being important, the input of each judge has been appropriate.
It is unfortunate that the court endorses the "bright line" test adopted by the Third District Court of Appeal in Delgado-Santos v. State, 471 So.2d 74 (Fla. 3d DCA 1985), thus eliminating the flexibility to meet each factual situation open-mindedly. In my view, the "bright line" test effects a lockstep or mind-set that could produce the injustice the test seeks to prevent. Moreover, I question the majority's interpretation of the legislative history of the federal rule.
In my view, the Fifth District Court of Appeal displayed restraint and wisdom in Robinson v. State, 455 So.2d 481 (Fla. 5th DCA 1984), by adopting a case by case basis for determining the admissibility of statements under section 90.801(2)(a), Florida Statutes (1985); and there was statutory authority for their doing so.
The statute provides:
(2) A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:

*1284 (a) Inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition.
Id. (emphasis added). There is nothing in the statute to define "proceeding"; and one can reasonably ask the question: Why should not a statement by a witness who makes it to an investigating officer in the witness' handwriting, sworn to under oath with penalty of perjury before a notary, be admitted as evidence when the witness, at trial, admits having made the statement but gives an inconsistent statement at trial where the witness is subject to cross-examination?
The Supreme Court of Washington, interpreting a statute identical to Florida's in State v. Smith, 97 Wash.2d 856, 651 P.2d 207 (1982) (en banc), held such statement to be within the framework of "other proceeding," saying:
It is well accepted that "other proceeding" includes grand jury proceedings. See D. Louisell & C. Mueller, at 420; Annot., What is "Other Proceeding" Under Rule 801(d)(1)(A) of Federal Rules of Evidence, Excepting From Hearsay Rule Prior Inconsistent Statement Given "At a Trial, Hearing, or Other Proceeding" 37 A.L.R. Fed. 855 (1978). The Ninth Circuit extended this interpretation and upon reviewing the rule's legislative history it determined that a tape-recorded statement made under oath and taken in an immigration investigation was admissible. United States v. Castro-Ayon, 537 F.2d 1055 (9th Cir.), cert. denied, 429 U.S. 983, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976). The court determined that the Legislature intended the term "other proceeding" to be open-ended and not restricted to grand jury proceedings. The court also compared grand jury proceedings to immigration proceedings and found enough similarities between the two to admit the statements. The court specifically added: "We do not hold, as the question is not before us, that every sworn statement given during a police-station interrogation would be admissible." 537 F.2d at 1058.
We likewise decline to answer the issue broadly. We do not interpret the rule to always exclude[1] or always admit[2] such affidavits. The purposes of the rule and the facts of each case must be analyzed. In determining whether evidence should be admitted, reliability is the key. In many cases, the inconsistent statement is more likely to be true than the testimony at trial as it was made nearer in time to the matter to which it relates and is less likely to be influenced by factors such as fear or forgetfulness. One commentator has addressed the question of admissibility as follows:
Inquiry into what other statements are encompassed by the Rule should be informed by the two purposes Congress had in mind in narrowing the provision originally proposed by the Court. The first was to remove doubt as to the making of the prior statement.... The second purpose was to provide at least the minimal guarantees of truthfulness which an oath and the circumstance of a formalized proceeding tend to assure. Clearly, however, the prior statement need not have been subject to cross-examination at the time made, for Congress was satisfied to rely upon delayed cross-examination of the declarant at trial to expose error or falsehood in the statement. (Footnotes omitted.) D. Louisell & C. Mueller, supra § 419, at 169-71.
Here, there was no question that the statement was made since Ms. Conlin testified to that fact. Minimal guaranties of truthfulness were met since the statement was attested to before a notary, under oath and subject to penalty for perjury. Additionally, the witness wrote the statement in her own words. The jury, seeing Rachael Conlin on the stand, under oath, and hearing her explanation of the inconsistent statement while subject to cross examination, was in a position to determine which statement was true.

*1285 III
Another factor to be considered is the original purpose of the sworn statement. It was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause, thus allowing charges to be filed against defendant. The four methods are:
(1) filing of an information by the prosecutor in superior court (see Const. art. 1, § 25, and RCW 10.37.026); (2) grand jury indictment (see RCW 10.[27]); (3) inquest proceedings (see RCW 36.24); and (4) filing of a criminal complaint before a magistrate (see RCW 10.16).

State v. Jefferson, 79 Wash.2d 345, 347, 485 P.2d 77 (1971).
The first method, the one used here, is usually the result of police investigations into alleged criminal activity, and the taking of statements from witnesses and the presentment of them to the prosecuting attorney. The prosecuting attorney then exercises discretion in finding probable cause and files an information. "Other proceeding" under the rule would clearly cover the other three methods of finding probable cause listed above. That is, if the witness gave a statement, necessarily under oath to a grand jury, in an inquest proceeding or to a magistrate, that statement would be admissible as substantive evidence. Since the purpose of the statements in the first method is the same as the other three methods, that is determining probable cause, it should also be covered by the rule in an appropriate case such as we have before us.
To sum up, each case depends on its facts with reliability the key. Here, the complaining witness-victim voluntarily wrote the statement herself, swore to it under oath with penalty of perjury before a notary, admitted at trial she had made the statement and gave an inconsistent statement at trial where she was subject to cross examination. ER 801(d)(1)(A) is satisfied under the totality of these circumstances.
[1] Some federal courts would apparently exclude all affidavits made to investigating officials as substantive evidence under Fed.R.Evid. 801(d)(1)(A). Those courts, however, have not dealt with facts identical to the ones before us. E.g., United States v. Livingston, 661 F.2d 239 (D.C. Cir.1981) (A postal inspector asked the witness questions, took notes, typed a statement based on the witness' responses and asked her to read and sign it. At trial the witness gave inconsistent testimony and either did not recall making the statements to the inspector or denied them.); United States v. Ragghianti, 560 F.2d 1376 (9th Cir.1977) (The government's witness changed her story on the stand and did not recall making the prior inconsistent statement. The circumstances surrounding the prior inconsistent statement were not set forth except that it was given to an FBI agent, the investigating officer.).
[2] At least one other state court which has adopted Fed.R.Evid. 801(d)(1)(A) would admit an affidavit signed by a witness any time it is taken under oath before an official who is authorized to hear evidence and administer oaths. Slavens v. State, 1 Ark. App. 245, 614 S.W.2d 529 (1981). Appellant relies heavily upon State v. Maestas, 92 N.M. 135, 584 P.2d 182 (Ct.App. 1978). The New Mexico court would seemingly always admit prior inconsistent statements such as the one made in the instant case. New Mexico, however, has adopted a different rule of evidence from Washington's which allows all prior inconsistent statements to be admitted as substantive evidence regardless of whether they were taken in a proceeding or under oath.
Id. 651 P.2d at 209-11.
Like the Fifth District Court of Appeal in Robinson, I am impressed with State v. Smith. Rather than make much about "judicial reasoning," as some would, the writer believes that we appellate judges merely use reasons to explain or support our ultimate value judgments. I happen to share those judgments expressed in Robinson; and it would be vain to suggest anything more pretentious, exquisite or esoteric than that.
The Third District Court of Appeal relies upon United States v. Ragghianti, 560 F.2d 1376 (9th Cir.1977), which is factually a far cry from State v. Smith. Recently, William Schneider, in reviewing a newly published book, said:
In Alfred Hitchcock's classic film, The Lady Vanishes, the professor is confronted with evidence proving, incontrovertibly, *1286 that his explanation of the case is wrong. "Nonsense," he replies, unfazed. "My theory is perfectly correct. It is the facts that are misleading."
I feel that it is incorrect to beat the drum for "other proceeding" as being equal to a grand jury proceeding. In United States v. Castro-Ayon, 537 F.2d 1055 (9th Cir.1976), the court, in holding an immigration interrogation to be a proceeding, said:
We recently underscored our adherence to the "orthodox rule" that prior inconsistent statements were admissible only for purposes of impeachment. United States v. Tavares, 512 F.2d 872 (9th Cir. 1975). Except where independent grounds exist for their admission, such statements have been excluded, for all but their impeachment value, by the hearsay rule. See, e.g., Wheeler v. United States, 382 F.2d 998 (10th Cir.1967).
... .
We do not hold, as the question is not before us, that every sworn statement given during a police-station interrogation would be admissible. While this immigration proceeding bears many similarities to the station-house interrogation, we believe that it qualifies as an "other proceeding" within the meaning of the statute.
Id. at 1057-58.
I am not trying to equate factually State v. Smith and United States v. Castro-Ayon. That they are different is further support for a case by case inquiry.
In Annot., 30 A.L.R.4th 414 (1984), additional reasons are recited in support of each point of view:
It is a general rule that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness and is not competent as substantive evidence of the facts to which such statements relate. Accordingly, a number of courts in modern criminal state cases have taken the view that a prior inconsistent statement of a witness may be used as or admitted into, evidence for impeachment purposes only, and may not be considered as substantive evidence of the facts to which it relates, on the usual bases that the declarant may not have been subject to cross-examination when he made the statement, and that the trier of fact could not observe the declarant's demeanor at the time he made the statement (§ 3, infra). There is, however, a growing number of jurisdictions which no longer adhere to the general rule, and which now permit, by judicial construction statute, or amendment of the rules, such prior inconsistent statements of a witness in a criminal proceeding to be used as affirmative evidence of the facts to which such statements relate where the declarant is available or called as a witness at the trial, and is subject to cross-examination, and where the statement would be admissible if made by the witness while testifying (§ 4, infra). The usual reasons given by such courts are that most of the lost protections in the use of out-of-court statements as substantive evidence are largely regained where the declarant is a witness and can be confronted and cross-examined, that the prior statements, of necessity, are made closer in time to the event in question when memories are fresher, and, moreover, the oath is not as strong a guaranty of truth as it may have been at one time.
Id. at 418 (footnote omitted). See also United States v. Ingram, 600 F.2d 260, 261 (10th Cir.1979).
The present case is yet another reason for adopting the case by case method. The majority has failed to consider the present sworn statement, which is not part of the appellate record. What we know of it is the transcript of the trial, which refers to it. We know that it was taped at the police station by a female homicide investigating officer with over ten years' experience; that the witness was not sworn before the statement was taken and was given a Miranda warning, instead, with her mother present. The taped statement was then *1287 transcribed by a secretary and presented by the investigator to the witness to read on the following day when she returned to the police station, again perhaps with her mother. The investigating officer testified:
A All right. I had explained to her that it was going to be put in written form and that she would be asked to come back to the station and read it, and if she disagreed or if there were any changes or corrections or whatever to make, she was to read it over and then we would discuss anything.
Q Were there any corrections made?
A No, she read the statement and agreed with it, and at that time, it was notarized or her signature and the statement was notarized.
On cross-examination, she testified:
Q Okay. At your request, she came in the next day?
A Yes.
Q Was her mother present with her at that time too?
A I can't recall if she was, but I believe she was.
Q And, at that time, did you hand her the statement that had been taken the previous day?
A Yes. She sat in a chair right next to my desk and read the statement page by page, and I gave her a pencil and asked her if there was anything that she wanted to talk to me about, to just indicate with a small mark when she got through reading it, and she just read it page by page.
The notary, an aide with the police department for sixteen years, then testified:
Q When you notarized it and Miss Davis was before you, did you swear her in? What was your procedure?
A I swore her in after the statement was taken. I was called down to notarize her signature, and I swore her in. Then I asked her if she had read this statement.
Q What was her response?
A She had read the statement. I asked her if she understood the statement, and she said yes.
Q Then what did she do?
A Then I had her sign the statement, and I notarized the signature.
The above scenario is different from Smith in at least two respects. First, the witness did not write the statement in her own hand. Second, it was not originally made under oath under penalty of perjury. Even the investigating officer's testimony never mentions that she told the witness, after the statement was taken, (a) that it was to be sworn and (b) that the penalties for lying under oath were criminal in nature. Accordingly, I would have reversed the trial court's admission of the statement because of my concern for the distinctions between this case and Smith. Accordingly, I agree with the reversal but for none of the reasons expressed by the majority.
I have two final thoughts which arise out of the majority's certification of the question posed as being of great public importance. First, I agree that the question is appropriately certified. Second, I am apprehensive that this state's highest court will approve the decision of the majority herein with the result that the residents of the circuits which comprise the jurisdiction of the Fifth District Court of Appeal will lose what they now have pursuant to Robinson; namely, an opportunity for their juries to be presented with reliable evidence, on a case by case basis.
This case involves a death; and the circumstances did not justify consideration of the statement as substantive evidence. Let us consider another realistic hypothetical. A stepfather sexually abuses his teenage stepdaughter in one of the judicial circuits comprising Florida's Fifth District. During the investigation, she is warned that the statement she is about to write, describing the abuse, is to be under oath and subject to perjury. She understands what perjury is and its ramifications. She then writes out, without suggestion from others, how she was abused by her stepfather. She signs before a notary. Weeks later, *1288 after being constantly pressured by her mother  who warns of imprisonment for the stepfather and poverty for the family  the stepdaughter recants. I have to think that such original statement would pass muster under Robinson. If the Supreme Court of Florida adopts the view of this court's majority, Robinson will no longer be the law of that district.
The writer is first reminded, in thinking of the question of reliability, of Justice Holmes' observation that the Constitution and life are both an experiment. The second reminder, grimly comical, is of Steve Martin's skit, some years ago, on medieval justice. He first submerged the witness in water to determine if he was telling the truth. Then turning to the audience, he said, in effect:
What if there were a better way? If a witness could tell his story to six men, good and true!
He then hesitated, said "Nah!" and returned to his medieval methods.