# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50133-3-II |
| Respondent, | |
| v. | |
| PAUL DEREK GOODIN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Paul Goodin appeals from his second degree assault and felony harassment convictions, asserting that the trial court erred by admitting the victim's written statement as substantive evidence under ER 801(d)(1)(i), and that the jury's special verdict finding that he knew the victim was pregnant when committing harassment against her must be stricken. We hold that the trial court properly admitted the victim's written statement and that Goodin's contention with the jury's special verdict is moot. Accordingly, we affirm.

## FACTS

Goodin and Michelle Gardner began dating in the summer of 2016. Gardner was pregnant from a previous relationship. On September 20, 2016, Gardner was sleeping at Goodin's mother's house when she awoke to Goodin looking through her belongings and asking for her keys. Goodin told Gardner that he needed to get his tobacco from her car. Gardner gave Goodin her keys and went back to sleep.

A few minutes later, Gardner awoke to a noise, went to the door, and saw an unfamiliar car drive away. Gardner called Goodin's phone and told him, "Bring me my keys right now."

Report of Proceedings (RP) at 139. Goodin hung up on Gardner. After several more phone calls and arguments, Goodin eventually walked back to his mother's house.

When Goodin returned, Gardner told him that she wanted to end their relationship. Gardner retrieved her keys and sweatshirt from Goodin and began walking to her car. Gardner saw that Goodin was walking after her while "playing around" with a pocketknife. Gardner quickly entered her car and locked the doors. Goodin tapped on a car window with his knife and said, "If you call the police, [expletive], I will kill you and your unborn baby." RP at 145. Gardner called 911.

Lakewood Police Officer Jordan Feldman arrested Goodin and seized his pocketknife. Goodin told Feldman that Gardner was lying and "that they had broken up and her calling the police was her way of punishing him." RP at 195-96. The State charged Goodin with second degree assault and felony harassment.

Gardner and Feldman were the only witnesses at trial, and each testified consistently with the facts above. Additionally, Gardner testified that she did not know whether she had thought Goodin was going to hurt her on the night of the incident and that she did not think he would hurt her unborn child. The State then confronted Gardner with her written statement to police in which she had stated, "I believe [Goodin] is going to hurt or kill me and my unborn baby or have someone else do it to me." RP at 147-148. Gardner testified that she did not remember writing that portion of the statement.

The State moved to admit as substantive evidence Gardner's written police statement. Goodin objected to admission of Gardner's written statement, asserting that the State had not established foundation for its admission and that the written statement was not sufficiently

2

inconsistent with Gardner's testimony under ER 801(d)(1). The trial court ruled that Gardner's

written statement was admissible as a prior inconsistent statement subject to the State laying

additional foundation.

Gardner then testified that she had signed and dated her written statement below language

on the form that declared her statement was true and made voluntarily under penalty of perjury.

Gardner additionally testified that she had written her statement truthfully, voluntarily, and

absent any coercion or threats. On cross-examination, Gardner testified that she had not

understood that she was writing her statement under penalty of perjury.

The following exchange took place during Officer Feldman's testimony:

> [State]: Describe the procedure that you go through in terms of handing that document to the victim.
>
> [Feldman]: When I do it, I give the statement to the victim or whoever's writing the statement. I explain the top part is just administrative information, like their name. There's a little statement block and then there's all the lines. So I just explained [sic] from top to bottom how to fill out the form.
>
> [State]: Part of that form includes a block making reference to truthful statements, is that something that you direct attention to the victim or witnesses who fill out that statement?
>
> [Feldman]: Yes. Usually that's reserved for people who are being accused of some sort of crime, but it's something that we make them aware of.
>
> [State]: Do you also make aware of the people filling out the forms to read the forms and then sign?
>
> [Feldman]: Absolutely.
>
> . . . .
>
> [State]: And Ms. Gardner filled out that statement?
>
> [Feldman]: Yes.
>
> [State]: You went over that statement with her?
>
> [Feldman]: Yes. After she was complete, I reviewed the statement with her and made sure everything that she wanted to be in there was in there.
>
> [State]: And you made an inquiry as to her reading everything and then signing it?
>
> [Feldman]: Correct.

RP at 197-98. Following this exchange, the State moved to admit Gardner's written statement, which motion the trial court granted over Goodin's objection.

The jury returned verdicts finding Goodin guilty of second degree assault and felony harassment. The jury also returned a special verdict finding in relevant part that Goodin's crime of felony harassment was "an aggravated offense because the defendant knew the victim was pregnant." Clerk's Papers (CP) at 43. The trial court did not enhance Goodin's sentence based on the jury's special verdict finding that he knew the victim was pregnant.

ANALYSIS

I. ER 801

Goodin first contends that the trial court erred by admitting Gardner's written police statement as substantive evidence under ER 801(d)(1)(i). We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). A trial court abuses its discretion when its decision is based on untenable grounds or reasons. *State v. Bessey*, 191 Wn. App. 1, 6, 361 P.3d 763 (2015).

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is not admissible "except as provided by [evidentiary] rules, by other court rules, or by statute." ER 802. ER 801(d)(1)(i) provides that a statement is not hearsay if

> [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

No. 50133-3-II

An "other proceeding" under this rule may include statements made to investigating police officers. *State v. Smith*, 97 Wn.2d 856, 859-61, 651 P.2d 207 (1982); *see also State v. Otton*, 185 Wn.2d 673, 681-84, 374 P.3d 1108 (2016) (reaffirming decision in *Smith*). Because a statement under ER 801(d) is not hearsay, it may be admitted "as substantive evidence, that is, to prove the truth of matter asserted in the statement." *Otton*, 185 Wn.2d at 679.

When determining whether a prior statement is admissible as substantive evidence under ER 801(d)(1)(i), courts must examine the specific facts under which the statement was given, with reliability as the key factor in determining admissibility. *Smith*, 97 Wn.2d at 861. In ascertaining a prior statement's reliability, courts apply the following four-factor test:

> (1) whether the witness voluntarily made the statement, (2) whether there were minimal guaranties of truthfulness, (3) whether the statement was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause, and (4) whether the witness was subject to cross examination when giving the subsequent inconsistent statement.

*State v. Thach*, 126 Wn. App. 297, 308, 106 P.3d 782 (2005) (citing *Smith*, 97 Wn.2d at 861-63); *Otton*, 185 Wn.2d at 680. Goodin challenges only the second factor, "whether there were minimal guaranties of truthfulness." *Thach*, 126 Wn. App. at 308.

In *Smith*, our Supreme Court noted that minimal guaranties of truthfulness are generally assured where the declarant provided the prior written statement under oath and under circumstances resembling a formalized proceeding. 97 Wn.2d at 862 (quoting 4 D. LOUISELL & C. MUELLER, FEDERAL EVIDENCE 3-18 § 419, 169-71 (1980)). The *Smith* Court held that minimal guaranties of truthfulness were established for purposes of ER 801(d)(1)(i) where the declarant had written the statement in her own words and "the statement was attested to before a notary, under oath and subject to penalty for perjury." 97 Wn.2d at 862. In *Thach*, we held that minimal

5

guaranties of truthfulness were established where the declarant testified that she had signed her statement under penalty of perjury and an officer witnessed the declarant sign the written statement form. 126 Wn. App. at 308.

In *State v. Nelson*, 74 Wn. App. 380, 389-90, 874 P.2d 170 (1994), Division One of this court held that minimal guaranties of truthfulness were established where the declarant signed a written statement that included the following language, "I have read the attached statement or it has been read to me and I know the contents of the statement." Although the declarant in *Nelson* was equivocal at trial as to whether she had read the affidavit incorporating this quoted language above, the *Nelson* court determined that the record was sufficient to find that the declarant knew her statement was being taken under penalty of perjury. 74 Wn. App. at 390. In reaching this determination, the *Nelson* court relied on testimony that the prosecutor had reviewed the statement with the declarant and explained its importance, as well as testimony from the notary that she routinely asks whether a declarant has read a statement before executing it. 74 Wn. App. at 390.

Here, Gardner's statement was made under oath and under circumstances resembling a formal proceeding and, thus, the trial court did not abuse its discretion in determining that minimal guarantees of truthfulness has been established permitting the statement's admission. Regarding the formal proceeding requirement, Gardner's statement "was taken as standard procedure in a police investigation that resulted in the filing of an information." *Nelson*, 74 Wn. App. at 391. As noted in *Nelson*, statements taken in the course of a police investigation constitute a formal proceeding under ER 801 "[a]bsent other indicia of unreliability." *Nelson*, 74 Wn. App. at 391 (citing *Smith*, 97 Wn.2d at 862-63); *Otton*, 185 Wn.2d at 681-84. Because the

record here does not reveal that law enforcement officers departed from a standard police investigation when taking Gardner's written statement, we hold that the trial court did not abuse its discretion in finding that the statement was given under circumstances resembling a formal proceeding.

Regarding the oath requirement, RCW 9A.72.085 provides in relevant part:

Whenever, under any law of this state or under any rule, order, or requirement made under the law of this state, any matter in an official proceeding is required or permitted to be supported, evidenced, established, or proved by a person's sworn written statement, declaration, verification, certificate, oath, or affidavit, the matter may with like force and effect be supported, evidenced, established, or proved in the official proceeding by an unsworn written statement, declaration, verification, or certificate, which:

(a) Recites that it is certified or declared by the person to be true under penalty of perjury;

(b) Is subscribed by the person;

(c) States the date and place of its execution; and

(d) States that it is so certified or declared under the laws of the state of Washington.

Here, Gardner's written statement complied with RCW 9A.72.085 and, thus, we hold that the oath requirement was met here. *Nelson*, 74 Wn. App. at 389-90. Although Gardner testified at trial that she had not understood that her statement was made under penalty of perjury, other evidence was presented under which the trial court could find that she had understood her statement to be made under penalty of perjury. 74 Wn. App. at 390. Gardner signed her written statement below preprinted language on the written police statement form that stated, "*I, the undersigned, declare under penalty of perjury, under the laws of the State of Washington that the statements contained on this handwritten form (front, back and any additional pages) are true*

*and correct. I have made this statement voluntarily.*" Ex. 1A. Further, Feldman testified that it is his standard practice to direct the declarant's attention to the penalty of perjury language and to direct the declarant to read the form before signing it. Feldman also testified that he reviewed Gardner's statement with her and confirmed that she had read everything on the form before signing it. Based on this evidence, we hold that the trial court did not abuse its discretion in finding that the oath requirement was met here. Although Gardner testified that Feldman did not explain the police statement form to her or review the statement with her, we do not evaluate the credibility of witnesses. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

The circumstances present here are distinguishable from those in *State v. Nieto*, 119 Wn. App. 157, 162-63, 79 P.3d 473 (2003), in which Division One of this court held that minimal guarantees of truthfulness had not been established. In *Nieto*, the preprinted "penalty of perjury" language on the police statement form was ambiguous and did not comply with RCW 9A.72.085. 119 Wn. App. at 161-62. Additionally, the record in *Nieto* contained no indication that anyone had told the declarant that her statement was being given under penalty of perjury. 119 Wn. App. at 163. In contrast with *Nieto*, here the preprinted penalty of perjury language on Gardner's written police statement was unambiguous and complied with RCW 9A.72.085. And here there was evidence presented that the officer taking Gardner's statement had reviewed the statement with her and confirmed that she had read the form before signing it. Finally, unlike the declarant in *Nieto*, here Gardner testified that she had voluntarily and truthfully written her police statement. This further supports the trial court's reliability finding. Because Gardner's written police statement met minimal guarantees of truthfulness, the trial court did not abuse its discretion by admitting the statement as substantive evidence under ER 801(d)(1)(i).

## II. PREGNANT VICTIM SENTENCING ENHANCEMENT

Next, Goodin contends that the trial court erred by submitting to the jury a special verdict form asking whether Goodin knew the victim was pregnant during his commission of felony harassment. He requests us to strike the special verdict finding. The State concedes that the pregnant victim sentencing enhancement does not apply to felony harassment and, thus, it was error to submit the special verdict question to the jury. But the State contends that the issue is moot because the trial court did not apply the enhancement to Goodin's sentence. We agree that this issue is moot.

An issue is moot when a court can no longer provide meaningful relief. *In re Det. of J.S.*, 138 Wn. App. 882, 889, 159 P.3d 435 (2007). Goodin acknowledges that the trial court did not impose an exceptional sentence based on the jury's special verdict finding that he knew the victim was pregnant when committing felony harassment. Goodin states that he is raising this issue in the event that he is retried or resentenced for this charge. But in the event that Goodin is retried or resentenced for his felony harassment charge, the future resentencing court would determine whether a sentencing enhancement applies. *See* RCW 9.94A.535. Goodin presents no argument or authority that a future sentencing court would be bound to apply an erroneous jury special verdict finding to enhance his sentence. Moreover, he may raise this legal challenge before any future sentencing court. Therefore, there is no effective relief that we may provide based on the jury's special verdict, and we dismiss this issue as moot.

Accordingly, we affirm.

No. 50133-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Bjorgen, J.

Sutton, J.