# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54856-9-II |
| Respondent, | |
| v. | |
| RONALD EDWARD STEEN, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Ronald Steen entered a storage unit and removed several boxes of custom wheels. Steen was arrested and charged with second degree burglary. His case proceeded to a jury trial where the State's evidence showed that the unit's door was opened forcefully and that the true owner of the wheels had not authorized Steen to remove them. Steen was found guilty.

Steen argues in this appeal that he received ineffective assistance of counsel because his attorney failed to properly seek admission of a notarized affidavit signed by his alleged partner, Jim Wells, to support Steen's defense that he believed he was authorized to remove the wheels from the storage unit. We disagree because Steen has not shown the affidavit would have been admissible, so he has not shown that he was prejudiced by the alleged deficiency.

Steen also filed a statement of additional grounds for review (SAG), but none of his additional arguments entitles him to relief. We affirm.

FACTS

I. BACKGROUND

A wheel distribution company rented several units at a storage facility to store overstock wheels. One night, the storage facility manager, who lived on site, was awakened by the sound of "metal hitting something," so she looked out her window. 1 Verbatim Rep. of Proc. (VRP) at 232. She saw a truck outside one of the storage units, rented by the wheel company, with something in the bed of the truck. She saw a man sitting in the driver's seat with the engine running and a different man "running up to the truck and jump[ing] in." 1 VRP at 230. Then, she saw the truck drive away. She went back to sleep without calling the police.

The facility manager was woken up by another loud banging noise sometime in the early morning, and she saw the same truck outside the same unit. This time, she saw one man "throwing the wheels from the unit into the back" of the same truck that had been there earlier. 1 VRP at 232 The man was alone, and the manager had never seen him at the unit before. The manager called the police.

Police arrived at the storage unit and found a truck with approximately 20 boxes of custom wheels in the bed. The boxes were identical to approximately 100 other boxes that were located inside of the storage unit. Officers saw grind marks on the hardware latch on the door of the storage unit that were consistent with grinding by a power tool, and the unit was locked with an elongated, blue padlock that was different from the circular, chrome padlocks on the surrounding units. Officers took photos of the damage to the door and the padlock.

Ronald Steen approached officers and told them that he was authorized to access the unit to remove the wheels for an upcoming car show. Steen told officers his first name but would not

give his last name. Steen showed officers a key that he was wearing on a lanyard around his neck and told officers it was the key to the storage unit. Steen said that he was working with a partner, who was at home taking a break, but did not provide the partner's name. The interviewing officer asked for the partner's phone number, but Steen refused to provide that information.

Officers then interviewed the storage unit manager, who put them in touch with the owner of the wheel distribution company. The owner sent an employee, Dennis King, to speak with officers at the scene. King was one of only three employees who had access to the unit, and he did not recognize Steen as a fellow employee. King did not know of any upcoming car shows or any other business reason for the wheels to be removed on the day in question. King later performed an inventory and determined that 30-40 boxes of wheels were missing from the unit, even after recovering the boxes that were in the back of the truck when police arrived.

Steen was arrested and charged with second degree burglary.

## II. TRIAL

### A.    Pretrial Procedure

Approximately seven months after Steen's arrest, an affidavit and supplemental handwritten statement were created and notarized. The notarized affidavit was signed by Jim Wells and it provided:

I, Jim Wells, of Bonney Lake, in Pierce, Washington, MAKE OATH AND SAY THAT:

1.      I hired Ronald Steen on December 27, 2022, to help me clean out a storage unit containing car rims.

2.      I told Ron that we were moving the rims for a car show on New Year's Eve.

3.      I was to pay him $200.00 per day for 2 day of work.

> 4.     Ronald was clueless about my involvement and believed he was doing nothing wrong.

Clerk's Papers (CP) at 13. An attached handwritten and unsworn statement provided:

> To Whomever
>      My name is Jim Wells. I am writing this statement on behalf of Ronald Steen. On Dec. 27th he was arrested for bur[glary] and theft. I hired him to help me get some car rims ready for New Years car show. I kept him in the dark about my full involvement. I was to pay him 200.00 a day for 2 days. We were working together and he had no knowledge that he was helping me get the unit empty. Never did I tell him about the deal I made earlier. He only worked for me and was [clueless] to the deal I made.

CP at 14 (capitalization omitted). The parties do not dispute that Steen produced these documents to the State before trial, approximately four months after the incident. The State requested the full name and date of birth of Wells and the notary, but Steen did not know that information.

The State filed a motion in limine to exclude the Wells affidavit and statement as inadmissible hearsay. The court heard argument on the motion the morning of trial. Defense counsel argued:

> Mr. Steen is asking that this affidavit be entered into evidence. At this time, we do not have the notary available to testify. If that changes, I will let the Court know, and we can address that as it may be.
>      The basis that we're asking, on behalf of Mr. Steen, for this affidavit to be admitted is the right to have a fair trial, including the right to exculpatory evidence.

1 VRP at 7.[1] The State responded that the documents were hearsay and that counsel did not identify an exception that would make them admissible.

The court then asked if Steen was planning to call Wells as a witness. Defense counsel responded, "So, your Honor, Jim Wells is deceased, as is my understanding," but acknowledged

---

[1] Steen had two attorneys at trial, but only one presented argument about the affidavit.

4

that she did not have Wells' date of birth or contact information. 1 VRP at 9. Defense counsel did

not offer any proof that Wells was deceased, like a copy of a death certificate. Counsel argued:

> I will say if we did -- if the Court did say that it was admissible despite some, perhaps, foundational issues that are apparent, Defense would be seeking to admit it as a statement against interest where a party is unavailable. Obviously, if Mr. Wells is deceased, he's unavailable to testify. He makes inculpatory statements saying that Mr. Steen didn't know anything about my involvement. That involvement suggests some criminal liability; therefore, it's a statement against interest.
>
> And, again, Mr. Steen is asking that we have this affidavit admitted on his behalf. He has a right to a fair trial, and it's exculpatory.

1 VRP at 9. The court reserved ruling on the admissibility of the document, explaining:

> [A]s you said, I need to hear foundation. I would like an offer of proof made before I decide whether to admit this or not. Okay?
>
> So I'm going reserve on this for now, but when we get to that point, make sure to alert the Court so that we can excuse the jury and conduct the offer of proof.

1 VRP at 10. The case proceeded to trial and Steen never revisited the issue of the admissibility of

the affidavit.

B.     Evidence Presented

At trial, the State presented testimony from two police officers, the storage facility

manager, and King, all of whom testified consistently with the facts described above.

The State also presented three body-worn camera videos from the night of Steen's arrest.

In one video, Steen told officers that he was authorized to remove the wheels from the unit for an

upcoming car show. Steen also told officers that he had the key to the unit and that he was working

with his partner, who was taking a break, but did not provide the partner's name. The video also

showed Steen refusing to provide his full name and his partner's phone number.

Additionally, the State presented photos of the marks on the door of the unit, with law

enforcement testimony explaining that the marks on the hardware latch on the storage unit door

were consistent with grinding. The State also presented photos of the lock on the storage unit door, alongside testimony from the wheel company employee who explained that the lock in the photo was not the kind that was normally used to lock the door.

King testified consistently with what he told police on the night of the incident. He also said that if there were a car show or other business reason to move the wheels, King himself would have been responsible for moving them during business hours.

## C.      Instructions and Closing Arguments

The jury was instructed that "[a] person commits the crime of burglary in the second degree when he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein." CP at 23. The jury was also instructed that "[a] person acts with intent or intentionality when acting with the objective or purpose to accomplish a result that constitutes a crime." CP at 25.

The State, in its closing remarks, argued that Steen and his unknown partner must have forcefully removed the original padlock and switched it out for the padlock that Steen had the key to before the police arrived. The State also relied on the video to argue that Steen acted suspiciously when Steen did not tell officers the partner's name or contact information to corroborate his version of events.

In Steen's closing, he argued that the State did not meet its burden "to prove Mr. Steen's intent, his mindset, what was going on in his brain beyond a reasonable doubt." VRP at 264. He emphasized the video evidence of Steen's demeanor, including approaching officers rather than fleeing, showed that he did not have criminal intent. And Steen argued that regardless of testimony

showing he was not authorized to remove the wheels, the State failed to prove Steen had the requisite intent to commit a crime inside the storage unit.

The jury found Steen guilty of second degree burglary. Steen appeals.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Steen argues that he received ineffective assistance of counsel because his attorneys failed to recognize that the Wells affidavit was self-authenticating, instead believing the affidavit could not be admitted because the notary was not available to testify. The State responds that even if Steen's attorneys performed deficiently, Steen cannot show that he was prejudiced. We agree with the State.

Criminal defendants have the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. An appellant arguing ineffective assistance of counsel must show both deficient performance and prejudice. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). Failure to show either deficient performance or prejudice is fatal to the appeal. *Id.*

Prejudice requires showing a reasonable probability that, had counsel not performed deficiently, the factfinder would have had a reasonable doubt as to the defendant's guilt. *Id.* at 129. Where the claim of ineffective assistance relies on the failure to move to admit evidence, the prejudice analysis considers whether the trial court would have granted the motion. *See State v. Boyer*, 200 Wn. App. 7, 14, 401 P.3d 396, (2017) ("When one claims that [their] counsel was ineffective for failing to make a motion, [they] must also show that the motion likely would have been granted in order to establish prejudice.").

7

Even assuming, without deciding, that Steen's attorneys deficiently failed to recognize that the affidavit was self-authenticating, the affidavit still contained hearsay statements, so it would not have been admitted unless an exception to the rule against hearsay applied. ER 801, 802. Therefore, to make the requisite showing of prejudice, Steen must show that the affidavit would have been admissible.

Steen maintains that the affidavit would have been admitted under ER 804(b)(3) as a statement against Wells' penal interest. To support this claim, Steen must show that Wells was "unavailable as a witness"; that the statement "so far tended to subject [Wells] to . . . criminal liability . . . that a reasonable person in [Wells'] position would not have made the statement unless the person believed it to be true"; and that "corroborating circumstances clearly indicate the trustworthiness of the statement." ER 804(b)(3).

As a preliminary matter, the record does not contain sufficient evidence to show Wells' unavailability. Although defense counsel stated that it was her "understanding" that Wells was deceased, Steen did not provide any other evidence to establish his death, and counsel stated on the record that she did not have Wells' contact information or date of birth. Although a deceased declarant is certainly an unavailable declarant within the meaning of the rule, the record here does not show that Wells was actually deceased. *See* ER 804(a)(4). In addition, the affidavit does not clearly state that Wells was committing a criminal act. Our analysis could end here.

Moreover, even if Steen could show Wells' unavailability, he has not demonstrated corroborating circumstances clearly indicating that Wells' statement was trustworthy as required under ER 804(b)(3). "Our Supreme Court long ago established that to determine whether a hearsay statement against interest satisfies the requirement of trustworthiness, courts should assess a

statement's reliability using a nine-factor reliability test." *State v. J.K.T.*, 11 Wn. App. 2d 544, 566, 455 P.3d 173 (2019). The nine factors are as follows: whether the declarant had a motive to lie; the declarant's general character; whether multiple witnesses heard the statement; whether the statement was made spontaneously; whether the timing and relationship between the declarant and the subject suggests trustworthiness; whether the statement contains an express factual assertion; whether the declarant had personal knowledge; whether the declarant had a faulty recollection; and whether the circumstances indicate that the declarant misrepresented the defendant's involvement in the crime. *State v. McDonald*, 138 Wn.2d 680, 694, 981 P.2d 443 (1999).

Yet Steen has not applied any of those factors in his briefing to this court, instead arguing based on *State v. Smith*, 97 Wn.2d 856, 651 P.2d 207 (1982), that notarization is sufficient to guarantee truthfulness. But *Smith* concerned a testifying witness's prior inconsistent statement, which had been sworn under penalty of perjury and had been notarized. *Id.* at 858, 862. The *Smith* court evaluated whether the notarized statement was hearsay under ER 801(d)(1)(i), not ER 804(b)(3). *Id.* at 859. The court explained that the notarization met the "[m]inimal guaranties of truthfulness" necessary in that case because the declarant was "on the stand, under oath, and . . . subject to cross examination," allowing the jury to decide whether it found the witness's testimony or her notarized prior statement to be more credible. *Id.* at 862.

By contrast, ER 804(b)(3) requires the circumstances to "*clearly indicate* the trustworthiness of the statement," a much higher bar that is appropriate when a declarant is unavailable to testify. (Emphasis added.) We do not agree with Steen that the notary's signature and seal were sufficient to show trustworthiness for purposes of ER 804(b)(3).

Turning to the reliability factors themselves, the record does not contain sufficient information to show that the affidavit would have been deemed trustworthy under the appropriate test. The record contains no information regarding Wells' possible motive to lie, Wells' character, or his relationship with Steen. Nor does the record contain any information about whether the statement was spontaneous or prompted by a request from Steen or his attorney. We have no information about the relationship between Wells and Steen aside from the statement itself, and the timing of the statement does not suggest trustworthiness because it was made well after Steen's arrest as Steen was preparing for trial. And although the statement contains an express factual assertion, we have no information from which to assess whether Wells had personal knowledge aside from the statement itself, and it is unknown whether he had a faulty recollection. Finally, as to whether the circumstances indicate that Wells misrepresented Steen's involvement in the crime, we know only that the affidavit was prepared to aid in Steen's defense and that counsel did not have Wells' or the notary's contact or identifying information. Our record does not support a finding that the affidavit would have been admitted under ER 804(b)(3) had it been offered.

Finally, Steen contends that because he has a constitutional right to present a defense, if the evidence in question was just minimally relevant, the trial court would have had to admit it. But the right to present a defense does not require the trial court to ignore the rules of evidence. *See State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). Steen has not cited to any case that establishes that a trial court must admit otherwise inadmissible hearsay evidence because the evidence is being offered by a criminal defendant.

In sum, on this record, Steen has not shown a reasonable probability that the outcome of the case would have been different had his attorneys performed differently because the affidavit

10

contained hearsay and Steen has not shown that it would have been admitted under ER 804(b)(3). Therefore, Steen has not shown the requisite prejudice. So even if his counsel performed deficiently, he is not entitled to a new trial on this basis.

## II. STATEMENT OF ADDITIONAL GROUNDS

Steen filed a SAG raising additional arguments, none of which entitle him to relief.

First, he argues that police did not have lawful grounds to conduct a warrantless search of the storage unit. He argues that evidence derived from that search should have been suppressed at trial. He also claims that his attorney performed deficiently in failing to recognize these issues. But the storage unit was rented by the wheel company, not Steen, and Steen fails to present argument showing that he had a constitutionally protected privacy interest in the area that was searched. *See* U.S. CONST. amend. IV; WASH. CONST. art. I, § 7; *State v. Bowman*, 198 Wn.2d 609, 618, 498 P.3d 478 (2021). Thus, we decline to consider this argument under RAP 10.10(c).

Steen asserts his arrest was unlawful because the officers' probable cause for arresting him was based partially on what they found in the storage unit. But because Steen has failed to show the officers' entry into the storage unit was unlawful, this challenge to the validity of his arrest also fails.

Steen also argues that his attorney deficiently failed to rely on the Wells affidavit to argue for a lesser included offense instruction of first degree criminal trespass. But as we conclude above, the record does not show that the affidavit was admissible, so this claim of error also fails.

Finally, Steen argues that the cumulative effect of these additional alleged deficiencies show that his attorney did not have sufficient knowledge of the rules of evidence. Having found no additional deficiencies, we do not agree with Steen's assessment. And even if multiple

deficiencies occurred, his SAG does not contain any argument as to their cumulative prejudice.

RAP 10.10(c). Therefore, he has not raised any arguments in his SAG that entitle him to relief.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, J.

VELJACIC, A.C.J.