UNITED STATES of America,

v.

John T. LIVINGSTON, Appellant.

UNITED STATES of America,

v.

David COYLE, Appellant.

Nos. 80–2296, 80–2346.

United States Court of Appeals, District of Columbia Circuit.

Argued June 24, 1981.

Decided Aug. 20, 1981.

Donald Stevenson Schwinn * and Tom O'Brien * for appellant Livingston. Ellen Sue Shapiro, Washington, D. C. (appointed by this court), was on the brief for appellant Livingston. Richard Strafer, Washington, D. C. (appointed by this court), entered an appearance for appellant Livingston.

Richard S. Bromberg, Washington, D. C. (appointed by this court), for appellant Coyle.

J. Alvin Stout, III, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., and John A. Terry, Michael W. Farrell, and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before WRIGHT and MIKVA, Circuit Judges, and MARKEY,** Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

Appellants, who were tried jointly for armed robbery of a post office, challenge their convictions on several evidentiary and procedural grounds. Because we agree that the trial court improperly instructed the jury regarding the use of prior inconsistent statements, we reverse the convictions and remand for a new trial. We do not reach any of the other issues raised by appellants.

* Entered an appearance as student counsel pursuant to Rule 20 of the General Rules of this court.

** Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

## I. BACKGROUND

On March 5, 1980 two men robbed the Brookland Station Post Office in Washington, D. C. The pair had approached the last employee leaving the office and forced him at gunpoint to let them into the post office and open the safes. The men took about $550 in cash, a money order writing machine, a validating plate, and 97 money orders.

On June 3, 1980 appellants John T. Livingston and David Coyle were indicted on two counts: armed robbery of a post office [1] and possession of stolen United States money orders.[2] At trial the Government introduced several witnesses to testify about the events on the day of the robbery and about property stolen from the post office. Several witnesses also testified about the cashing and attempted cashing of a number of stolen money orders in Philadelphia and Trenton. These two lines of evidence were linked by testimony of three women, acquaintances of Livingston and Coyle, who accompanied them on a trip to Philadelphia and Trenton one week after the robbery. The defense presented no evidence. The jury returned verdicts of guilty as to both appellants on the armed robbery count.[3] Appellants were sentenced to 25 years' incarceration, and they subsequently brought this appeal.

## II. USE OF PRIOR INCONSISTENT STATEMENTS

Prior to trial each of the women accompanying appellants to Philadelphia and Trenton was questioned by, and gave at least one sworn statement to, postal inspectors. In particular, the statement of Yvonne Hester indicated that the appellants had discussed and joked about several aspects of the robbery.[4] At trial Ms. Hester appeared as a Government witness. When she denied or failed to recall conversations mentioned in the statement to the postal inspector, the prosecutor read damaging excerpts from it.[5] On cross-examination Ms. Hester stated that when she signed the statement she did not know what she was signing and that she did not remember the conversations mentioned in the statement.[6]

In his instructions to the jury the trial judge noted the confrontation with prior statements.[7] He then gave guidance as to how the prior inconsistent statements could be used. The pertinent instruction, based in part on language in Rule 801(d)(1)(A) of the Federal Rules of Evidence,[8] read as follows:

> However, if the prior statement was given by the witness while under oath, subject to the penalty of perjury, at a prior trial, hearing, or other proceeding, or in a deposition, and if you find that such prior statement under oath is inconsistent with

1. 18 U.S.C. § 2114 (1976).

2. *Id.* § 500.

3. On the second day of the trial the court had dismissed the second count because the Government had failed to allege possession with intent to defraud.

4. *See* 3 Transcript of Trial (Tr.) 33–35 (Sept. 10, 1980). The statement included the following portion that was read at trial:

    They were sitting in the living room laughing and talking. David said John had the gun and they were laughing about how scared the man in the post office was. David said that besides the money orders that he and John took out a machine to make the money orders on and that they used the machine to make up the money orders later. I saw David with a whole stack of postal money orders. * * * John asked David if he made sure he wiped off their fingerprints and

David said "yeah, man, I'm sure that I didn't leave any."

*Id.* at 34–35.

5. *Id.; see also id.* at 45–46 (Sept. 11, 1980) (use of prior statement in closing argument).

6. *Id.* at 41, 47–48 (Sept. 10, 1980).

7. *Id.* at 101 (Sept. 11, 1980).

8. (d) *Statements which are not hearsay.* A statement is not hearsay if—

    (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition * * *[.]

Fed.R.Evid. 801(d)(1)(A).

the present statement in court, you may accept either the prior statement or the present testimony in court as reflecting the truth of any matter contained therein.[9]

Defense counsel objected to this instruction,[10] and appellants contend that the trial court erred in giving it. They argue that Hester's prior statements did not meet the requirements of Rule 801(d)(1)(A) and that they therefore should never have been considered as substantive evidence.

### A. Prior Statements as Substantive Evidence

■ Under the Federal Rules a prior inconsistent statement by a witness is not hearsay if "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition * * *." Fed.R.Evid. 801(d)(1)(A) (emphasis added). Here, a postal inspector went to Ms. Hester's residence, asked her questions, took notes, wrote a statement based on her responses, asked her to read a typewritten copy and to make any necessary changes, and then obtained her signature swearing to the accuracy of the statement.[11] We do not think that these circumstances satisfy the Rule's requirement of "a trial, hearing, or other proceeding." [12]

In order to assure authenticity and reliability, "the Rule seems to contemplate situations in which an official verbatim record is routinely kept, whether stenographically

or by electronic means, under legal authority." 4 D. Louisell & C. Mueller, Federal Evidence § 419 at 171 (1980). The Rule's requirements were designed "to limit substantive use of prior inconsistent statements to those situations in which there is likely to be *overwhelming* proof that the witness did in fact make the prior inconsistent statement." Blakey, *Substantive Use of Prior Inconsistent Statements Under the Federal Rules of Evidence*, 64 Ky.L.J. 3, 10 (1975) (emphasis added).[13] In this case no official verbatim record was routinely kept by postal inspectors. The formalities used "provide less assurance that a statement was in fact made and sworn to than the formalities which surround a firsthand appearance at an on-the-record proceeding." 4 D. Louisell & C. Mueller, *supra*, § 419 at 172 (discussing the formalities surrounding affidavits).

Courts of Appeals have generally found that statements made to investigating officials fail to qualify as made at a proceeding under Rule 801(d)(1)(A). *United States v. Ragghianti*, 560 F.2d 1376, 1381 (9th Cir. 1977) (prior statement obtained by Federal Bureau of Investigation in the course of a criminal investigation not admissible for substantive purposes); *Martin v. United States*, 528 F.2d 1157, 1161 (4th Cir. 1975) (statement before two investigating officers was not made at a proceeding and therefore does not qualify as substantive evidence); *United States v. Tavares*, 512 F.2d 872, 875

---

9. 3 Tr. at 102 (Sept. 11, 1980).

10. *Id.* at 150 (Sept. 10, 1980).

11. *Id.* at 37, 103. Hester's statement does appear to have been given under oath subject to the penalty of perjury. *See* appellee's brief at 23–24.

12. Ideally, the requirements of the Rule should eliminate disputes over whether the prior statements were in fact made. "When law enforcement authorities have witnesses whom they fear may later change their testimony and prove recalcitrant at trial, they will have to present them before the grand jury in person instead of allowing a police officer to relate or read to the grand jury the prior statement of the witness." Silbert, *Federal Rule of Evidence 801(d)(1)(A)*, 49 Temple L.Q. 880, 884 (1976).

13. In exempting certain prior statements from the rule against hearsay, Rule 801(d)(1)(A) represents a significant innovation in the law of evidence. The rule was enacted following "[g]reat controversy" in Congress over its proper scope. *See* 4 D. Louisell & C. Mueller, Federal Evidence § 410 at 22 (1980). Its current form is a careful compromise between the Supreme Court's proposal of free admissibility and congressional concerns for "firm additional assurances of the reliability of the prior statement." H.R.Rep.No.650, 93d Cong., 2d Sess. 13 (1974); 4 D. Louisell & C. Mueller, *supra*, § 410 at 44. The Rule thus reflects a deliberate legislative intent to limit admissibility to a narrow class of prior statements genuinely worthy of belief.

(9th Cir. 1975) (statements to FBI agent and sheriff's department officer not admissible for substantive purposes). These cases provide the clearest analogy to the present case; they suggest that Hester's statement was hearsay inadmissible to prove the truth of matters contained within it.

The one exception to the line of cases in this area is *United States v. Castro-Ayon*, 537 F.2d 1055 (9th Cir.), *cert. denied*, 429 U.S. 983, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976). There the court found that statements made to a federal agent during an interrogation at a Border Patrol station fell within the Rule's requirements. However, the court noted that

> the immigration proceeding before Agent Pearce bears many similarities to a grand-jury proceeding: both are investigatory, ex parte, inquisitive, sworn, basically prosecutorial, held before an officer other than the arresting officer, recorded, and held in circumstances of some legal formality. Indeed, this immigration proceeding provides more legal rights for the witnesses than does a grand jury: the right to remain totally silent, the right to counsel, and the right to have the interrogator inform the witness of these rights.

*Id.* at 1058 (footnote omitted).

Hester's statement to the postal inspector lacks many of the circumstantial guarantees of reliability identified in *Castro-Ayon*. The questioning was not held before an independent officer; no recordings were made; the interrogation occurred at Hester's home; and no rights were afforded to her. Indeed, the circumstances fall far short of those in a grand jury proceeding,

the paradigmatic "other proceeding" under the Rule. *See id.* at 1057 & n.3.

Accordingly, Hester's statement should have been admitted only for the purpose of impeaching her credibility. It should not have been treated as having any potential substantive or independent testimonial value.[14] While some commentators doubt that juries can distinguish between the use of prior statements for impeachment as opposed to substantive purposes,[15] the distinction remains an important one if the Rules as drafted are to retain their vitality.

### B. *Reversible Error*

■ The prior inconsistent statements were important to the Government's case and might well have influenced the jury's verdict. The Government itself recognized that Hester's statement "was clearly probative of the identity of the robbers." Appellee's brief at 22. Hester's statement to the postal inspector included a comment allegedly made by one defendant about the division of the proceeds from the robbery [16] and a detailed exchange between both appellants about several aspects of the robbery.[17] These statements provided the most direct evidence linking the defendants to the thefts and the stolen money orders. Not only were they read into the record on direct examination, but the prosecutor also read the statements twice in his closing argument and then summarized them at the end of his argument.[18] The repeated emphasis on Hester's prior statement surely must have made an impression on the jurors. Moreover, the prosecutor's reliance on the statement suggests its importance to the Government's entire case.

---

**14.** In its brief the Government also suggests that the prior statement was not hearsay because Hester adopted it on the stand. Appellee's brief at 22 & n.14. On direct examination Hester's admission of the statement and its truth was at best ambiguous. 3 Tr. at 35 (Sept. 10, 1980). On cross-examination she failed to remember making parts of the statement, *e.g., id.* at 40, and she did not remember events in it, *id.* at 47–48. She also testified that she could not read the statement and that she did not know what she had signed her name to, *id.* at 41. Further, she was not even sure that events

in the statement had taken place. *Id.* at 52–53. This record hardly constitutes a convincing adoption of the prior statement.

**15.** *See, e.g.*, 3A J. Wigmore, Evidence § 1018 (Chadbourn rev. 1970).

**16.** 3 Tr. at 33 (Sept. 10, 1980).

**17.** *Id.* at 34–35; *see* note 3 *supra*.

**18.** 3 Tr. at 40–41, 45–46, 47 (Sept. 11, 1980).

Under these circumstances we can hardly say that the judge's error in allowing the prior statement to be considered for its substantive value "did not influence the jury, or had but very slight effect * * *." *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946) (discussing harmless error standard). Thus the error in this case was sufficiently grave to warrant reversal.

### III. CONCLUSION

The convictions are therefore reversed and the cases are remanded for a new trial.

*So ordered.*