

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE   JUN 09 2016
Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on June 9, 2016

Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 91669-1 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| NAKIA LEE OTTON, | ) | |
| | ) | |
| Petitioner. | ) | Filed: JUN 09 2016 |
| | ) | |

YU, J.— While ostensibly concerning the interpretation of an evidentiary rule, this is actually a case about stare decisis. Petitioner Nakia Lee Otton seeks reversal of his convictions for second degree assault and felony harassment. The victim testified at Otton's trial, and because her testimony was inconsistent with her prior sworn statement to police about the incident, the trial court admitted the victim's prior statement as substantive evidence. Otton acknowledges that the trial court's decision and the Court of Appeals opinion affirming that decision were proper in accordance with this court's long-standing precedent. He asks us to reject that precedent. We decline the invitation and affirm the Court of Appeals.

## FACTUAL AND PROCEDURAL HISTORY

Otton and the victim had a romantic relationship and lived in the same household. The victim was disabled due to a history of multiple brain surgeries and sometimes had difficulties with memory and speaking. Late one night in December 2012, Otton and the victim had a confrontation. After Otton left the house, the victim called 911. When the police arrived, the victim gave a written statement, signed under penalty of perjury, alleging that Otton held her on the bed and against the wall by her neck so that she could not breathe and told her he was going to kill her. The State charged Otton with second degree assault and felony harassment.

At trial, the victim testified that while she would not have intentionally lied to police, her allegations against Otton were false, and that she had called 911 because she was "angry" and "had a couple of drinks." 2A Verbatim Report of Proceedings (VRP) (Aug. 7, 2013) at 132. At the State's request and over Otton's objection, the trial court admitted the victim's written statement as substantive evidence pursuant to ER 801(d)(1)(i), in accordance with *State v. Smith*, 97 Wn.2d 856, 651 P.2d 207 (1982), and *State v. Binh Thach*, 126 Wn. App. 297, 106 P.3d 782 (2005). *Id.* at 212. The jury convicted Otton as charged, and the Court of Appeals affirmed in an unpublished opinion. *State v. Otton*, noted at 187 Wn. App. 1001, *review granted*, 184 Wn.2d 1017, 360 P.3d 819 (2015).

2

ISSUE

Should this court reject *Smith*'s interpretation of ER 801(d)(1)(i)?

ANALYSIS

A.    Standard of review and principles of stare decisis

A decision to admit or exclude evidence is generally reviewed for abuse of discretion. *State v. Griffin*, 173 Wn.2d 467, 473, 268 P.3d 924 (2012). But in this case, Otton does not challenge the manner in which the trial court exercised its discretion; he challenges the way this court previously interpreted ER 801(d)(1)(i). "'Interpretation of an evidentiary rule is a question of law, which we review de novo,'" *id.* (quoting *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007)), but we have previously addressed the precise question Otton now raises. We must therefore be mindful of stare decisis.

"Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change." *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). In order to effectuate the purposes of stare decisis, this court will reject its prior holdings only upon "a clear showing that an established rule is incorrect and harmful." *Id.* There are also "'relatively rare' occasions when a court should eschew prior precedent in deference to intervening authority" where "the legal underpinnings of our precedent have changed or disappeared altogether."

3

*W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014) (internal quotation marks omitted) (quoting *Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co.*, 215 F.3d 136, 141 (1st Cir. 2000)).

When a party asks this court to reject its prior decision, it "is an invitation we do not take lightly." *State v. Barber*, 170 Wn.2d 854, 863, 248 P.3d 494 (2011). The question is not whether we would make the same decision if the issue presented were a matter of first impression. Instead, the question is whether the prior decision is so problematic that it *must* be rejected, despite the many benefits of adhering to precedent—"'promot[ing] the evenhanded, predictable, and consistent development of legal principles, foster[ing] reliance on judicial decisions, and contribut[ing] to the actual and perceived integrity of the judicial process.'" *Keene v. Edie*, 131 Wn.2d 822, 831, 935 P.2d 588 (1997) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991)). With these principles in mind, we turn to the precedent Otton asks us to reject—*Smith*, 97 Wn.2d 856.

B.     The *Smith* decision and its application in this case

*Smith* was a case about the proper interpretation of ER 801(d)(1)(i), an evidentiary rule concerning the definition of "hearsay." "Hearsay" is defined generally as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

4

ER 801(c). "Hearsay is not admissible except as provided by these [evidentiary] rules, by other court rules, or by statute." ER 802. However, ER 801(d)(1) provides that an out-of-court statement is *not* hearsay if

> [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is
> (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

Because such a statement is not hearsay, it is admissible at trial as substantive evidence, that is, to prove the truth of matter asserted in the statement.[1]

As noted, it is undisputed on appeal that the victim in this case testified at Otton's trial, that she was subject to cross-examination about her prior written statement, that the prior written statement was inconsistent with the victim's trial testimony, and that the prior written statement was given under oath and subject to the penalty of perjury. The only question is whether her police interview was an "other proceeding" within the meaning of ER 801(d)(1)(i).

When confronted with the same question in 1982, this court declined to issue a categorical ruling that a police interview is either *always* or *never* considered an "other proceeding." *Smith*, 97 Wn.2d at 861. Rather, we held that "[t]he purposes of the rule and the facts of each case must be analyzed. In determining whether

---

[1] The statement's admissibility is subject, of course, to other applicable evidentiary and constitutional limitations.

evidence should be admitted, reliability is the key." *Id.* Applying this approach to the facts presented, *Smith* held that the police interview at issue in that case was an "other proceeding" because "the complaining witness-victim voluntarily wrote the statement herself, swore to it under oath with penalty of perjury before a notary, admitted at trial she had made the statement and gave an inconsistent statement at trial where she was subject to cross examination." *Id.* at 863. The victim's sworn statement was therefore admissible as substantive evidence. *Id.* at 857.

We have not reexamined *Smith* since it was issued. However, based on *Smith*, the Court of Appeals has formulated a four-factor test for determining whether an out-of-court statement by a nonparty witness is admissible pursuant to ER 801(d)(1)(i):

> (1) whether the witness voluntarily made the statement, (2) whether there were minimal guaranties of truthfulness, (3) whether the statement was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause, and (4) whether the witness was subject to cross examination when giving the subsequent inconsistent statement.

*Thach*, 126 Wn. App. at 308. Otton does not challenge the trial court's discretionary determinations that the police interview at issue here qualified as an "other proceeding" and that the victim's written statement was properly admitted in accordance with this four-factor test. He also does not contend that the four-

factor test is anything but a faithful application of *Smith*. Rather, he argues that we should reject *Smith*.

C.     Otton has not shown that *Smith* is incorrect or harmful

*Smith* reasonably held that the phrase "other proceeding" must be interpreted in a way that gives effect to its plainly "open-ended" language, *Smith*, 97 Wn.2d at 861, and the constraints of the four-factor test articulated by the Court of Appeals prevent the harmfulness that could theoretically flow from an unrestrained, subjective inquiry into "amorphous notions of 'reliability,'" *Crawford v. Washington*, 541 U.S. 36, 61, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We therefore hold that Otton has not shown that *Smith*'s interpretation of an "other proceeding" for purposes of ER 801(d)(1)(i) is clearly incorrect or harmful.

1.     Otton has not shown that *Smith* is incorrect

Where a party asks this court to reject its previous decision, the party must show that the previous decision is "incorrect." *Stranger Creek*, 77 Wn.2d at 653. Otton contends that *Smith* is incorrect because it conflicts with (1) the plain language of ER 801(d)(1)(i) and applicable principles of rule interpretation and (2) decisions of other jurisdictions that have considered similar evidentiary rules. We disagree with both contentions.

a.      Interpretation of evidentiary rules

"This court interprets court rules the same way it interprets statutes, using the tools of statutory construction." *State v. Hawkins*, 181 Wn.2d 170, 183, 332 P.3d 408 (2014). We therefore begin with the plain language of the rule. *Id.* ER 801(d)(1)(i)'s plain language allows prior inconsistent statements by nonparty witnesses to be admitted as substantive evidence if the statements were "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." "Other proceeding" is not defined in the rule, and its meaning is not apparent from the rule's plain language. *Smith* therefore appropriately looked to the "history and purposes" of the federal counterpart to ER 801(d)(1)(i). *Smith*, 97 Wn.2d at 859; *see Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002) (statutory ambiguity may be resolved by considering relevant legislative history).

*Smith* noted that the first proposed version of the federal rule would have allowed "all prior inconsistent statements to be used as substantive evidence," but a requirement "that the statement be made under oath, subject to penalty for perjury" was later added "to assure reliability." *Smith*, 97 Wn.2d at 859-60. However, further proposals to restrict the rule by requiring greater procedural formalities (that the statements be given during grand jury proceedings and subject to cross-examination at the time they were given) were rejected. *Id.* at 860. This history

8

shows that statements admitted under the rule must meet a certain level of reliability and must have been given with some level of procedural formality, but that the phrase "other proceeding" was intentionally left "open-ended." *Id.* at 861.

*Smith* also considered "the original purpose of the sworn statement," and noted that the statement given in that case "was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause." *Id.* at 862 (citing *State v. Jefferson*, 79 Wn.2d 345, 347, 485 P.2d 77 (1971)). The court noted that "'[o]ther proceeding' under the rule would clearly cover" three of the four methods—grand jury proceedings, inquest proceedings, and filing a criminal complaint before a magistrate. *Id.* at 863. It would therefore be an anomaly to categorically exclude the fourth method—"police investigations into alleged criminal activity, and the taking of statements from witnesses and the presentment of them to the prosecuting attorney." *Id.* at 862.

Otton, however, argues that based on applicable principles of statutory interpretation, this court must hold that an "other proceeding" "mean[s] something similar to the preceding specific terms 'trial' or 'hearing.'" Suppl. Br. of Pet'r at 6. This, according to Otton, would include "judicial proceedings, often adversarial, where the declarant is officially placed under oath and subject to questioning" but not proceedings like those at issue here, where voluntary, sworn witness statements are given outside "a courtroom or governmental office." *Id.* at 6-7. Even if we

were to assume that this could be a reasonable interpretation in the first instance, it is not compelled by the plain language of ER 801(d)(1)(i).

By focusing on the terms "trial" and "hearing," Otton takes into account only some of the context in which the term "other proceeding" is used. However, we must "give[ ] effect to the plain language of a court rule, as discerned by reading the rule *in its entirety* and harmonizing *all* of its provisions." *State v. George*, 160 Wn.2d 727, 735, 158 P.3d 1169 (2007) (emphasis added). This means we must consider the fact that the plain language of ER 801(d)(1)(i) also includes statements made at depositions, which are not necessarily judicial proceedings and may take place outside of a courtroom or governmental office. Otton's proposed interpretation also reads into the phrase "other proceeding" terms that are not there. ER 801(d)(1)(i) does not refer to other *judicial* proceedings or other *adversarial* proceedings or other *formal* proceedings. It refers only to an "other proceeding," a phrase that "does not, in itself, reveal its own dimension." *United States v. Castro-Ayon*, 537 F.2d 1055, 1057 (9th Cir. 1976).

Perhaps most problematically, even if we were to agree that the victim's statement here was not given at an "other proceeding," Otton does not propose a workable analytical framework for future cases. *See Key Design Inc. v. Moser*, 138 Wn.2d 875, 883, 983 P.2d 653 (1999) (adhering to precedent in part because "Key Design proposes no alternative rule which would provide the clarity and

10

certainty it says the [previous] rule lacks"). He certainly proposes a bright-line rule that witness statements given to investigating police officers are never admissible under ER 801(d)(1)(i), but the suggestions that an "other proceeding" must be adversarial and occur in a governmental building seem untenable. It is not clear how the physical location where a statement is given would necessarily advance the plain language or underlying purposes of the rule, and a grand jury proceeding is clearly an "other proceeding," even though it is "investigatory," rather than adversarial, in nature. *Castro-Ayon*, 537 F.2d at 1058.

We thus conclude that *Smith*'s interpretation of ER 801(d)(1)(i) was reasonable and that Otton's reading of ER 801(d)(1)(i) is not compelled by the rule's plain language.

b. Decisions from other jurisdictions

Where our prior interpretation is inconsistent with the decisions of "the vast majority of our sister states," there may be good reason to reconsider our own approach. *Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 417, 150 P.3d 545 (2007). However, a decision is not necessarily incorrect merely because it lacks universal acceptance. *See Key Design*, 138 Wn.2d at 883 (argument "about the rule being extreme, unusually strict, and not generally accepted or favored" held insufficient). In this case, the decisions of other jurisdictions do not show that *Smith*'s interpretation of ER 801(d)(1)(i) is clearly incorrect.

We begin with the one jurisdiction that clearly and completely disagrees with *Smith*—Florida. Florida courts have specifically rejected *Smith*'s case-by-case approach and instead use a "'bright line' test" to interpret Florida's version of ER 801(d)(1)(i). *Delgado-Santos v. State*, 471 So. 2d 74, 79 (Fla. Dist. Ct. App. 1985). Under that test, an "'other proceeding'" does not ever include a "police interrogation." *State v. Delgado-Santos*, 497 So. 2d 1199, 1199 (Fla. 1986). However, while the Florida evidentiary rule is textually similar to ER 801(d)(1)(i), the Florida courts faced different considerations than the *Smith* court did. In light of these different considerations, we cannot say that the Florida courts' disagreement with *Smith* clearly shows that *Smith* is incorrect.

Notably, in the seminal case establishing Florida's bright-line test, the court was plainly troubled by the circumstances under which the statement at issue in that case was made: the witness who gave the statement was 16 years old at the time, he was accused of participating in the homicide then under investigation, and he did not give his statement until he had been in custody ("although supposedly not 'under arrest'") for over six hours and subjected to "a long process of 'pre-statement interrogation.'" *Delgado-Santos*, 471 So. 2d at 75. The Florida court freely acknowledged that the "admixture of Ortiz's youth and the improprieties involved in confining him without arrest and without transporting him to a youth

facility" would have been sufficient, in and of themselves, to exclude the proffered

statement as substantively unreliable. *Id.* at 78.

Nevertheless, the Florida court rejected a case-by-case approach, and it did

so explicitly as a matter of legislative deference:

> While the legislature and Congress may have been ultimately
> concerned with the "reliability" of a particular statement, they sought
> to vindicate that concern only by establishing given and objective
> criteria as to the circumstances, including the kind of forum, under
> which it was given. And it is for the legislature, not the courts, to
> determine not only the policy to be promoted, but the means by which
> that end is to be achieved.

*Id.* at 79. In Washington, however, evidentiary rules are adopted by this court

pursuant to its inherent powers under the state constitution. *State v. Gresham*, 173

Wn.2d 405, 428, 269 P.3d 207 (2012). "[W]hen interpreting court rules we are not

concerned about usurping the role of the legislature because we alone are uniquely

positioned to declare the correct interpretation of any court-adopted rule." *Jafar v.*

*Webb*, 177 Wn.2d 520, 527, 303 P.3d 1042 (2013).

Moreover, ER 801 is subject to amendment according to prescribed

procedures, and ER 801(d)(1)(i) has never been amended to reject *Smith*. *See* GR

9 (procedures for rule making by this court). When considering challenges to

previous *statutory* interpretations, "[t]his court presumes that the legislature is

aware of judicial interpretations of its enactments and takes its failure to amend a

statute following a judicial decision interpreting that statute to indicate legislative

acquiescence in that decision." *City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009). We may comfortably presume that this court is aware of its own interpretations of evidentiary rules, and here, over 30 years have elapsed since *Smith* was decided and ER 801(d)(1)(i) has not been amended to reject it.[2]

Otton also suggests that federal courts interpreting the federal equivalent of ER 801(d)(1)(i) have rejected *Smith*'s interpretation. In *United States v. Dietrich*, 854 F.2d 1056, 1061 (7th Cir. 1988), the Seventh Circuit held that "[t]he term 'other proceeding' is not unlimited. A typical police station interrogation, for example, is not an 'other proceeding' within the meaning of the [federal] Rule[, FED. R. EVID. 801(d)(1)(A)]." Instead, *Dietrich* posited that "'[t]he [federal] Rule seems to contemplate situations in which an official verbatim record is routinely kept, whether stenographically or by electronic means, under legal authority.'" *Id.* (quoting *United States v. Livingston*, 213 U.S. App. D.C. 18, 661 F.2d 239, 240 (1981)). That might be a reasonable way to limit the phrase "other proceeding," but it is not clear why it is more reasonable than *Smith*'s interpretation, let alone so clearly correct that we must adopt it and reject *Smith*. The text of ER 801(d)(1)(i) makes absolutely no reference to official verbatim records, and does not clearly intend to limit an "other proceeding" on the basis of

---

[2] This is not to imply that the court would be unwilling to revisit the interpretation of the rule and modify it for clarity through the rule making process.

14

specific *procedural* indicia of reliability beyond those required by the rule's plain language.

Moreover, like the Florida court in *Delgado-Santos*, the federal court in *Dietrich* was plainly concerned about the fact that the statements at issue were of questionable *substantive* reliability, in part because they were given by an individual who was under imminent threat of arrest for allegations related to the ultimate crime at issue. 854 F.2d at 1061-62; *Delgado-Santos*, 471 So. 2d at 75. That concern is fully addressed by *Smith* and the four-factor test developed by the Court of Appeals, without imposing the inflexibility created by a bright-line rule. *See, e.g., State v. Nelson*, 74 Wn. App. 380, 388, 874 P.2d 170 (1994) ("Any motive to lie is therefore much less compelling in this case than if [the witness] had been questioned as a suspect."); *see also Tisdale v. State*, 498 So. 2d 1280, 1283 (Fla. Dist. Ct. App. 1986) (Glickstein, J., dissenting in part and concurring in part) ("In my view, the 'bright line' test effects a lockstep or mind-set that could produce the injustice the test seeks to prevent.").

Other federal cases also do not advance Otton's argument. Some cases, though holding statements made to investigating police were not given at an "other proceeding," explicitly acknowledge that the purpose of the rule is "to ensure the reliability and truthfulness of any prior inconsistent statement," and therefore look to "the totality of the circumstances" under which the statement was given. *United*

15

*States v. Day*, 789 F.2d 1217, 1223 (6th Cir. 1986); *see also Livingston*, 661 F.2d at 243. This clearly indicates an approval of a case-by-case approach turning on *some* indicia of reliability. And the Ninth Circuit has interpreted the federal rule in a manner entirely consistent with *Smith*, holding that an interrogation by immigration officials is an "other proceeding" under the rule and noting that "the choice of the open-ended term 'other proceedings' was intentional." *Castro-Ayon*, 537 F.2d at 1058.

If Washington were an extreme outlier in its interpretation of ER 801(d)(1)(i), we might reconsider *Smith*, even though it was a reasonable decision at the time it was made and has not been rejected by any intervening rule amendments. However, Washington is not such an outlier. Otton thus fails to show that *Smith* is clearly incorrect.

2.      Otton has not shown that *Smith* is harmful

Even if Otton could show that *Smith* is clearly incorrect, we will not reject our precedent unless it is "both incorrect *and* harmful."[3] *Barber*, 170 Wn.2d at 864. However, the four-factor test formulated by the Court of Appeals creates a principled framework for determining whether a prior, inconsistent, out-of-court statement is sufficiently reliable, and ER 801(d)(1)(i) actually requires *more*

---

[3] To the extent that Otton argues *Smith* is harmful *because* it is incorrect, we reject that argument. Incorrectness and harmfulness are separate inquiries. *Barber*, 170 Wn.2d at 864-65.

objective procedural indicia of reliability than many other states' rules. Otton

therefore has not shown that *Smith* is harmful.

Relying primarily on *Crawford*, 541 U.S. 36, Otton contends that any

substantive, case-by-case reliability determination is simply too subjective to be

allowed. *See* Suppl. Br. of Pet'r at 12-14. This argument confuses the

requirements of the confrontation clause at issue in *Crawford*, U.S. CONST. amend.

VI, with those of the evidentiary rule defining hearsay at issue here, ER

801(d)(1)(i). They are clearly not the same:

> While it may readily be conceded that hearsay rules and the
> Confrontation Clause are generally designed to protect similar values,
> it is quite a different thing to suggest that the overlap is complete and
> that the Confrontation Clause is nothing more or less than a
> codification of the rules of hearsay and their exceptions as they
> existed historically at common law.

*California v. Green*, 399 U.S. 149, 155, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).

The confrontation clause is a *procedural* guarantee that statements will be

tested in "the crucible of cross-examination."[4] *Crawford*, 541 U.S. at 61; *see also*

---

[4] We note that the focus of Otton's argument has shifted somewhat over the course of this appeal. His petition for review to this court appears to contend that *Smith* is no longer good law following *Crawford*. Pet. for Review at 9. At oral argument, however, Otton's attorney acknowledged that *Smith*'s interpretation of ER 801(1)(d)(i) is not jeopardized by *Crawford* as a matter of constitutional law. Wash. Supreme Court oral argument, *State v. Otton*, No. 91669-1 (Feb. 18, 2016), at 38 min., 3 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. We agree. ER 801(1)(d)(i), by its plain language, applies only when "[t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement," so the confrontation clause is *necessarily* satisfied for any statement admitted pursuant to ER 801(1)(d)(i). *See Crawford*, 541 U.S. at 61; *Green*, 399 U.S. at 164.

*Green*, 399 U.S. at 158 (discussing the purposes of the confrontation clause). An alleged confrontation clause violation is therefore appropriately reviewed as a matter of law—either the confrontation clause was violated or it was not, and the individual perspective and observations of the trial court are not at issue. *State v. Mason*, 160 Wn.2d 910, 922, 162 P.3d 396 (2007). Meanwhile, evidentiary rules should be applied and interpreted in a manner that promotes their substantive purpose—"that the truth may be ascertained and proceedings justly determined" in each individual case. ER 102. Evidentiary rulings are therefore appropriately reviewed for abuse of discretion. *See State v. Sisouvanh*, 175 Wn.2d 607, 621, 290 P.3d 942 (2012) (noting the considerations that support reviewing decisions for abuse of discretion).

Moreover, admissibility pursuant to ER 801(d)(1)(i) is not conditioned on each individual trial court's unrestrained assessment of reliability. Washington courts must work within a specific four-factor framework. Otton does not point to any published Washington cases that have applied this framework and reached conflicting conclusions, and we can find none. Washington courts have proved themselves well up to the task of evaluating evidence sought to be admitted pursuant to ER 801(d)(1)(i) in a consistent, evenhanded manner.

To the extent that Otton implies that it is inherently harmful to allow prior inconsistent statements to be admitted as substantive evidence without requiring

specific procedural formalities beyond those found in the plain language of ER 801(d)(1)(i), we disagree. Indeed, many states allow the admission of prior inconsistent statements as substantive evidence, even where the prior statements were given with few or no procedural formalities. *See* Douglas E. Beloof & Joel Shapiro, *Let the Truth Be Told: Proposed Hearsay Exceptions to Admit Domestic Violence Victims' Out of Court Statements as Substantive Evidence*, 11 COLUM. J. GENDER & L. 1, 11 n.29 (2002) (collecting statutes and court rules). Otton does not show those states have suffered any harm. And the beneficial effects of the procedural formalities that *are* required by ER 801(d)(1)(i)'s plain language are clearly preserved by *Smith* and its progeny. *State v. Lavaris*, 106 Wn.2d 340, 343, 721 P.2d 515 (1986) (noting that a statement to police that was *not* given under oath and subject to the penalty of perjury is *not* admissible as substantive evidence pursuant to ER 801(d)(1)(i)); *State v. McComas*, 186 Wn. App. 307, 319, 345 P.3d 36 (2015) (same); *State v. Nieto*, 119 Wn. App. 157, 161-62, 79 P.3d 473 (2003) (same); *State v. Sua*, 115 Wn. App. 29, 48, 60 P.3d 1234 (2003) (same).

Otton has not made a clear showing that *Smith* is incorrect or harmful. We thus adhere to the doctrine of stare decisis and reaffirm *Smith*'s interpretation of an "other proceeding" for purposes of ER 801(d)(1)(i).

## CONCLUSION

A party asking this court to reject its precedent faces a challenging task. The party must show not merely that it would have been reasonable to reach a different conclusion in the first instance, but that the prior decision is so incorrect and harmful that it would be unreasonable to adhere to it. Otton has not made such a showing. We affirm the Court of Appeals.

_____

WE CONCUR:

_____
madsen, C.J.

_____

_____

_____
Fairhurst, J.

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____

No. 91669-1

GORDON McCLOUD, J. (concurring)—I agree with the majority that this is

a case about stare decisis. The petitioner, Nakia Lee Otton, concedes that the Court

of Appeals' decision is correct under this court's holding in *State v. Smith*, 97 Wn.2d

856, 863, 651 P.2d 207 (1982), and he asks us to overrule that holding. Thus, this

case requires us to decide whether *Smith* should be abandoned as incorrect and

harmful. *See In re Rights to Water of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d

508 (1970) ("The true doctrine of stare decisis . . . requires a clear showing that an

established rule is incorrect and harmful before it is abandoned.").

I also agree with the majority that the phrase at issue in this case—"other

proceeding" in Evidence Rule (ER) 801(d)(1)(i)—is open ended. Had the drafters

intended to strictly enumerate the "proceedings" covered by the rule, they would

1

have done so. *See Rivard v. State*, 168 Wn.2d 775, 783, 231 P.3d 186 (2010) ("we interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous"). But I disagree with the majority's conclusion that the phrase "other proceeding" in ER 801(d)(1)(i) is *so* open ended that it includes police interviews or permits the kind of fact-specific, case-by-case reliability test that this court crafted in *Smith*.

Indeed, among all the jurisdictions with identical rules whose courts have addressed the issue, Washington is the only one that interprets the phrase in this way. Other courts have consistently held that the "other proceeding[s]" covered by rules equivalent to ER 801(d)(1)(i) are limited to routinized proceedings, bearing hallmarks of formality such as oversight by a neutral officer and simultaneous transcription under authority of law, and thus exclude statements taken as part of a police officer's investigation. For the reasons given in Part I below, I conclude that Washington's contrary interpretation is inconsistent with ER 801(d)(1)(i)'s plain language and is therefore incorrect. I nevertheless concur in the majority's decision to affirm the Court of Appeals because I agree that Otton has not met his burden to show that *Smith* is clearly harmful.

## I.    *SMITH* WAS INCORRECTLY DECIDED

As the majority correctly notes, ER 801(d)(1)(i)'s federal equivalent—the rule

on which ER 801(d)(1)(i) was based[1]—reflected a compromise between drafters

who wanted an "unrestricted version" admitting *all* prior inconsistent statements and

drafters who wanted a rule limiting admission to statements made "at a 'trial,

hearing, deposition, or before a grand jury.'" *Smith*, 97 Wn.2d 859-60 (quoting draft

rule). In light of that legislative history, and consistent with the statute's plain

language, the *Smith* court concluded that the compromise term "other proceeding"

in the rule included, but was not limited to, grand jury proceedings. *Id*. at 860-61.

This conclusion is sound; it is consistent with the legislative history and the case law

interpreting the federal rule or other state equivalents. *See* discussion *infra* Section

I.B. To the extent the majority endorses this aspect of *Smith*, I concur.

---

[1] When *Smith* was decided, Washington's ER 801(d)(1)(i) was identical to Fed. R. Evid. (FRE) 801(d)(1)(A). 97 Wn.2d at 859 (noting that the judicial comment on ER 801(d)(1) provided that "the rule 'conforms state law to federal practice'"); ER 801(d)(1) & cmt (1980). All the comments to Washington's ERs were deleted in 2006 when the Washington State Bar Association "concluded that the Comments have outlived their usefulness." Purpose statement to proposed amendment to ER Introductory Paragraph— Comment, 156 Wn.2d Proposed 16 (Official Advance Sheet No. 1, Jan. 17, 2006). But ER 801(d)(1)(i) remains substantially similar to its federal counterpart. Since then, FRE 801(d)(1)(A) has been amended to omit the phrase "under oath," but in all other respects the state and federal rules remain the same.

But the *Smith* court went on to address a more specific question: whether the open-ended phrase "other proceeding" in ER 801(d)(1)(i) included a situation in which detectives contacted a witness to request a statement, the witness talked with detectives and then wrote out a statement at the police station, and the witness subsequently signed the statement and swore to its accuracy before a notary. 97 Wn.2d at 858. It held that the answer was yes because the statement came with "[m]inimal guaranties of truthfulness." *Id.* at 862.

To reach that conclusion, the *Smith* court relied on a single Ninth Circuit case, *United States v. Castro-Ayon*, 537 F.2d 1055 (9th Cir. 1976), interpreting the federal equivalent rule, Fed. R. Evid. (FRE) 801(d)(1)(A). But the *Smith* court misinterpreted *Castro-Ayon* and distinguished, without any explanation, cases holding that sworn statements made to investigating officers are not admissible under that rule. 97 Wn.2d at 860-61. In the 34 years since *Smith* was decided, many more courts have interpreted FRE 801(d)(1)(A) and equivalent state rules. Every court to do so has rejected Washington's interpretation; consequently, we are now an extreme outlier. The interpretation adopted by other jurisdictions is clear, consistent with the rule's plain language and legislative history, and much more amenable to fair application than *Smith*'s ad hoc approach is. I would therefore hold that *Smith* was incorrect.

A. To conclude that a police interview can be an "other proceeding" within the meaning of ER 801(d)(1)(i), the *Smith* court relied on a misreading of *Castro-Ayon* and distinguished, without explanation, more apposite cases reaching the opposite conclusion

In *Castro-Ayon*, the Ninth Circuit held that a tape-recorded interrogation by border agents was admissible under FRE 801(d)(1)(A). 537 F.2d at 1058. The *Smith* court acknowledged, in a footnote, that some federal courts had reached a very different conclusion, and would exclude sworn statements made to investigating officers from FRE 801(d)(1)(A)'s "other proceeding" hearsay exception. 97 Wn.2d at 861 n.1 (citing *United States v. Livingston*, 213 U.S. App. D.C. 18, 661 F.2d 239 (1981); *United States v. Ragghianti*, 560 F.2d 1376 (9th Cir. 1977)). But it dismissed these decisions without analysis as "not deal[ing] with facts identical to the ones before us." *Id.* The *Smith* court then went on to hold that admissibility under ER 801(d)(1)(i) is a fact-specific, case-by-case determination, which hinges on the prior statement's "reliability" rather than on the proceeding at which that statement was given: "each case depends on its facts with reliability the key." *Id.* at 863. It explained that a statement was admissible under ER 801(d)(1)(i) so long as it bore "'minimal guarantees of truthfulness.'" *Id.* at 861-62 (quoting DAVID W. LOUISELL & CHRISTOPHER B. MUELLER, FEDERAL EVIDENCE § 419, at 169-71 (1980)).

In this respect, *Smith* is actually inconsistent with *Castro-Ayon*. The *Castro-Ayon* court did not endorse the idea that certain statements might be reliable enough

5

to fall within FRE 801(d)(1)(A)'s "other proceeding" exception regardless of the proceeding at which they were given. Instead, that court held that the particular proceeding at issue in that case was sufficiently similar to a grand jury proceeding to fall within the ambit of FRE 801(d)(1)(A)'s "other proceeding" exception:

> [W]e note that the immigration proceeding before Agent Pearce bears many similarities to a grand-jury proceeding: both are investigatory, ex parte, inquisitive, sworn, basically prosecutorial, held before an officer other than the arresting officer, recorded, and held in circumstances of some legal formality. Indeed, this immigration proceeding provides more legal rights for the witnesses than does a grand jury: the right to remain totally silent, the right to counsel, and the right to have the interrogator inform the witness of these rights.
>
> We do not hold, as the question is not before us, that every sworn statement given during a police-station interrogation would be admissible. While this immigration proceeding bears many similarities to the station-house interrogation, we believe that it qualifies as an "other proceeding" within the meaning of the statute.

537 F.2d at 1058 (footnote omitted). Thus, *Castro-Ayon* was a holding about a particular semiformal *proceeding*, not a particular *statement*. *Id.* It does not support *Smith*'s holding that trial courts should determine "other proceeding" admissibility under ER 801(d)(1)(i) through an open-ended, case-by-case evaluation of a particular statement for "[m]inimal guarantees of truthfulness." *Smith*, 97 Wn.2d at 862.

6

B. Contrary to the majority's assertion, *Smith* is an extreme outlier; in the 30 years since *Smith* was decided, every other court to address the question has held that the "other proceeding[s]" covered by rules equivalent to FRE 801(d)(1)(A) do not include interviews by investigating officers

As noted above, *Smith* adopted the minority position when it was decided 34 years ago. It held that witness statements taken during a police investigation could fall within ER/FRE 801's "other proceeding" exception, even though the majority of federal courts to examine that question had reached the opposite conclusion. *Smith*, 97 Wn.2d at 861 n.1. Back then, however, the numbers were close: *Castro-Ayon* provided some support for *Smith*'s holding—albeit tenuous and indirect support—and two other federal cases rejected *Smith*'s interpretation of the rule. Thus, while *Smith* adopted a minority position, it could not be said to be contrary to an overwhelming majority of relevant precedent.

That is no longer true today, when many more cases have addressed the question. With the exception of *Castro-Ayon*, federal cases all hold that the "other proceeding[s]" contemplated in FRE 801(d)(1)(A) are proceedings in which "'an official verbatim record is routinely kept . . . under legal authority,'" and that

investigations by law enforcement do not meet this standard.[2] And relevant cases

from other states reach the same conclusion.[3]

Indeed, outside of Washington, no case has relied on *Castro-Ayon* to admit,

under FRE 801(d)(1)(A) or an equivalent state rule, a prior inconsistent statement

given to law enforcement during an investigation. A Westlaw search yields 25

controlling decisions[4] that cite *Castro-Ayon* for the principle that an investigation by

---

[2] *Livingston*, 661 F.2d at 242-43; *United States v. Bonnett*, 877 F.2d 1450, 1462 (10th Cir. 1989); *United States v. Dietrich*, 854 F.2d 1056, 1061-62 (7th Cir. 1988); *United States v. Day*, 789 F.2d 1217, 1222-23 (6th Cir. 1986); *see also Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001) (per curiam) (endorsing interpretation of ER 801(d)(1) adopted by the District of Columbia Circuit in *Livingston*, holding that meeting between attorney and witness, in which witness prepared an affidavit drafted by attorney, was not an "other proceeding" within meaning of rule); 29 AM. JUR. 2D *Evidence* § 681, at 741 (2008) ("It has been held that a proceeding contemplated by the Rule is a formal action before a judicial tribunal, as well as an action before a quasi-judicial officer or board, invoked to enforce or protect a right. This requirement contemplates situations in which an official verbatim record is routinely kept, whether stenographically or by electronic means, and under legal authority so as to insure its reliability." (footnote omitted)); John. F. Gillespie, Annotation, *What Is "Other Proceeding" under Rule 801(d)(1)(A) of Federal Rules of Evidence, Excepting from Hearsay Rule Prior Inconsistent Statement Given "at a Trial, Hearing, or Other Proceeding,"* 37 A.L.R. Fed. 855, 856-58 (1978).

[3] *E.g.*, *State v. Johnson*, 220 Neb. 392, 394, 398-99, 370 N.W.2d 136 (1985), *abrogated on other grounds by State v. Morris*, 251 Neb. 23, 33-34, 554 N.W.2d 627 (1996); *United States v. Powell*, 17 M.J. 975, 976 (A.C.M.R. 1984); *United States v. Whalen*, 15 M.J. 872, 878 (A.C.M.R. 1983); *United States v. Luke*, 13 M.J. 958, 960 (A.F.C.M.R. 1982); *Delgado-Santos v. State*, 471 So. 2d 74, 78 (Fla. Dist. Ct. App. 1985).

[4] I have omitted six unpublished opinions and one decision, *Robinson v. State*, 455 So. 2d 481 (Fla. Dist. Ct. App. 1984), whose agreement with *Castro-Ayon* was later overruled by *State v. Delgado-Santos*, 497 So. 2d 1199 (Fla. 1986).

law enforcement may be an "other proceeding" for purposes of FRE 801(d)(1)(A).

Of these 25, only 16 actually address that question.[5] Three of these are unhelpful to

---

[5] Nine of the remaining cases admit or exclude prior statements under FRE 801(d)(1)(A) or an equivalent rule without deciding whether investigations can ever constitute "other proceeding[s]." *Simmonds v. People*, 59 V.I. 480, 489-503 (2013) (trial court erred by admitting police interview statement under local rather than federal evidentiary rule but error was harmless (citing *Castro-Ayon* for discussion of FRE 801(d)(1)(A)'s legislative history)); *State v. Maestas*, 92 N.M. 135, 144-45, 584 P.2d 182 (1978) (citing *Castro-Ayon* for the principle that "inconsistent statements spoken by the victim under oath and 'on the stand' were admissible as substantive evidence"); *United States v. Tafollo-Cardenas*, 897 F.2d 976, 980 (9th Cir. 1990) (citing *Castro-Ayon* for the principle that prior inconsistent statement is admissible only if given "under oath subject to the penalty of perjury at a trial, hearing or other proceeding," and holding that unsworn statement given to arresting officer was not admissible as substantive evidence); *Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir. 1988) (citing *Castro-Ayon* for the principle that "other proceeding" in FRE 801(d)(1)(A) is defined broadly, but approving admission of prior inconsistent statement given in a deposition, consistent with the rule's plain language); *United States v. Mosley*, 555 F.2d 191, 193 (8th Cir. 1977) (citing *Castro-Ayon* for principle that grand jury proceedings are "other proceeding[s]" within the scope of FRE 801(d)(1)(A); holding that even if trial court erred by admitting prior inconsistent statement given to investigating prosecutor, error was harmless because the court also properly admitted statement given in grand jury proceeding, which was substantially similar); *State v. Sua*, 115 Wn. App. 29, 46-49, 60 P.3d 1234 (2003) (citing *Castro-Ayon* when summarizing *Smith*'s holding; finding witness statement at issue inadmissible even under *Smith* because it was not given under oath or subject to penalty of perjury); *State v. Johnson*, 40 Wn. App. 371, 378, 699 P.2d 221 (1985) (citing *Castro-Ayon* for the principle that "not every sworn statement given during a police interrogation would be admissible" and holding witness' prior statements inadmissible because they were either oral or unsigned); *Webb v. State*, 426 So. 2d 1033, 1034-35 & n.7 (Fla. Dist. Ct. App. 1983) (citing *Castro-Ayon* for the principle that grand jury testimony is admissible under state equivalent to FRE 801(d)(1)(A)); *Gilardi v. Schroeder*, 672 F. Supp. 1043, 1044 & n.1 (N.D. Ill. 1986) (affidavit given in proceeding before the federal Equal Employment Opportunity Commission was admissible under FRE 801(d)(1)(A), citing *Castro-Ayon*).

this analysis because they are Washington cases (*Smith* and its progeny).[6] But all of

the remaining 13 cases either reject *Castro-Ayon*'s holding entirely or limit that

holding to its facts:

- *State v. Collins*, 186 W. Va. 1, 7-8 & n.8, 409 S.E.2d 181 (1990) (noting that *Castro-Ayon* is an outlier that has been criticized in scholarship on FRE 801(d)(1)(A)).

- *State v. Smith*, 573 So. 2d 306, 314-16 (Fla. 1990) (distinguishing proceeding in *Castro-Ayon* (admissible as an "other proceeding" under FRE 801(d)(1)(A)) from prosecutor's transcribed investigative interrogation (inadmissible because it did not even remotely resemble a grand jury proceeding)).

- *State v. Johnson*, 220 Neb. 392, 394, 398-99, 370 N.W.2d 136 (1985), (victim's statement during interview with attorney was not an "other proceeding" under state equivalent of FRE 801(d)(1)(A); to the extent that *Castro-Ayon* supported that conclusion, it was "unique—and likely to remain so"), *abrogated on other grounds by State v. Morris*, 251 Neb. 23, 33-34, 554 N.W.2d 627 (1996).

- *Delgado-Santos v. State*, 471 So. 2d 74, 78 (Fla. Dist. Ct. App. 1985) ("the overwhelming weight of authority on the issue is that no variation of police investigatory activity constitutes an [FRE] 801(d)(1)(A) . . . proceeding" (collecting cases)).

---

[6] *Smith*, 97 Wn.2d at 863; *State v. McComas*, 186 Wn. App. 307, 314-17, 345 P.3d 36 (2015) (sworn statement given to investigating police officer was made in an "other proceeding" under ER 801(d)(1)(i) because Court of Appeals is bound by *Smith*); *State v. Nelson*, 74 Wn. App. 380, 391, 874 P.2d 170 (1994) (police interrogation is an "other proceeding" under *Smith*).

- *Tisdale v. State*, 498 So. 2d 1280, 1282 (Fla. Dist. Ct. App. 1986) (embracing *Delgado-Santos*' interpretation of rule equivalent to FRE 801(d)(1)(A) and explicitly rejecting *Smith*'s contrary interpretation).

- *United States v. Bonnett*, 877 F.2d 1450, 1462 (10th Cir. 1989) (rejecting argument that witness' statement to Federal Bureau of Investigation agents was admissible under FRE 801(d)(1)(A) because *Castro-Ayon* was "not persuasive and . . . clearly distinguishable").

- *United States v. Dietrich*, 854 F.2d 1056, 1061-62 (7th Cir. 1988) (reading *Castro-Ayon* as limited to "proceeding[s] . . . [that] contain[] many of the same procedural protections as a grand jury proceeding" and distinguishing the proceeding at issue in *Castro-Ayon* from a sworn statement made to investigating police officers in an interview that was neither transcribed nor conducted in front of a neutral third party).

- *United States v. Day*, 789 F.2d 1217, 1222-23 (6th Cir. 1986) (declining to follow *Castro-Ayon* "to the extent the facts are not distinguishable").

- *Bell v. City of Milwaukee*, 746 F.2d 1205, 1274 n.83 (7th Cir. 1984), (noting in dicta that district court probably erred by admitting witness' sworn statement to investigator under FRE 801(d)(1)(A); noting that *Castro-Ayon* might be contrary), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).

- *United States v. Powell*, 17 M.J. 975, 976 (A.C.M.R. 1984) (rejecting *Castro-Ayon* to the extent that it would allow admission of "a statement made in a policeman's office during a non-advocatory, inquisitorial police investigation merely because an oath was administered").

- *United States v. Whalen*, 15 M.J. 872, 878 (A.C.M.R. 1983) (stating that prior inconsistent statement made to investigating officer was not given in an "other proceeding" for purposes of hearsay exception; noting that *Castro-Ayon* is contrary).

- *United States v. Luke*, 13 M.J. 958, 960 (A.F.C.M.R. 1982) (rejecting *Castro-Ayon* to the extent that that case is not limited to its facts, i.e., to proceedings fundamentally similar to grand jury hearings).

- *Livingston*, 661 F.2d at 243 (holding that *Castro-Ayon* proceeding was distinguishable, for purposes of FRE 801(d)(1)(A) admissibility, from interview by postal inspector that was conducted at home of government witness who gave sworn statement but was afforded no rights, and that was neither transcribed nor conducted in front of an independent officer).

Given this overwhelming and consistent authority, I disagree with the majority's conclusion that "Washington is not such an outlier" in its interpretation of the phrase "other proceeding" in ER 801(d)(1)(i). Majority at 16.

      C. Contrary to the majority's assertion, Otton proposes a workable framework for analyzing ER 801(d)(1)(i) admissibility; it is the framework adopted by the other jurisdictions and compelled by the rule's plain language

I also disagree with the majority's assertion that "Otton does not propose a workable analytical framework for future cases." Majority at 10. Otton asks us to adopt the interpretation of "other proceeding" that is used by every single other court that has considered the issue presented in *Smith*. *See* Suppl. Br. of Pet'r at 11 (quoting *Dietrich*, 854 F.2d at 1061). And, as the majority expressly acknowledges, that interpretation holds that FRE 801(d)(1)(A) and state equivalent rules ""''contemplate situations in which *an official verbatim record* is *routinely* kept, whether stenographically or by electronic means, *under legal authority*.''"" Majority

12

at 14 (emphasis added) (quoting *Dietrich*, 854 F.2d at 1061 (quoting *Livingston*, 661 F.2d at 240)). In short, the rules contemplate routinized proceedings bearing hallmarks of formality such as oversight by an independent (i.e., neutral) officer and simultaneous transcription. *E.g.*, *Dietrich*, 854 F.2d at 1061; *Livingston*, 661 F.2d at 243.

The majority acknowledges that such an interpretation is "reasonable" but asserts that "it is not clear why it is more reasonable than *Smith*'s interpretation." Majority at 14. Again, I disagree. The interpretation of "other proceeding" adopted by the other jurisdictions is compelled by the rule of ejusdem generis, which holds that "'specific terms modify or restrict the application of general terms where both are used in sequence'" in a statute. *State v. Stockton*, 97 Wn.2d 528, 532, 647 P.2d 21 (1982) (quoting *Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d 1244 (1972)). In ER 801(d)(1)(i), as in its federal equivalent, the term "other proceeding" appears after a list of more specific terms: ". . . given under oath subject to the penalty of perjury at a *trial, hearing,* or other proceeding, or in a deposition." Applying the interpretive canon of ejusdem generis, the phrase "other proceeding" must be read to encompass only those "proceeding[s]" that are fundamentally similar to a trial or hearing. *Id.* This is precisely why every other court addressing the question has held that police interviews are not "other proceeding[s]" within the meaning of the

13

rule. *See Livingston*, 661 F.2d at 243 (statement given to investigating officers inadmissible under FRE 801(d)(1)(A) because "the circumstances fall far short of those in a grand jury proceeding, the paradigmatic 'other proceeding' under the Rule").

In contrast to these other courts' interpretation, the four-factor reliability test that Washington courts have derived from *Smith* bears absolutely no relationship to ER 801(d)(1)(i)'s plain language whatsoever.[7] Indeed, the first *Smith* factor— whether the witness gave the statement voluntarily—is inconsistent with ER 801(d)(1)(i)'s plain language. Since trial testimony is not necessarily given voluntarily, the voluntary nature of a statement is clearly irrelevant under ER 801(d)(1)(i). And the fourth factor—whether the witness was subject to cross-examination when giving the subsequent inconsistent statement—is unhelpful because it is always satisfied. Moreover, *Smith*'s ad hoc approach, in which "each case depends on its facts with reliability the key," 97 Wn.2d at 863, is inconsistent

---

[7] As the majority notes, subsequent state Court of Appeals decisions have derived from *Smith* four factors for determining admissibility under ER 801(d)(1)(i): "'(1) whether the witness voluntarily made the statement, (2) whether there were minimal guaranties of truthfulness, (3) whether the statement was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause, and (4) whether the witness was subject to cross examination when giving the subsequent inconsistent statement.'" Majority at 6 (quoting *State v. Thach*, 126 Wn. App. 297, 308, 106 P.3d 782 (2005)); *State v. Nelson*, 74 Wn. App. 380, 383, 387, 874 P.2d 170 (1994).

14

with the federal rule's legislative history, which reveals a compromise decision to restrict the rule's coverage to certain types of *proceedings* (as opposed to certain types of *statements*). *See Tisdale*, 498 So. 2d at 1282 ("the congressional dichotomy between House and Senate and the ultimate compromise giving rise to federal rule 801(d)(1)(A)[ ] seem to dictate a 'bright line' construction rather than a case-by-case analysis of the circumstances surrounding the taking of the statement to determine reliability and thus admissibility").

Because *Smith* is inconsistent with ER 801(d)(1)(i)'s plain language and the overwhelming majority of precedent interpreting equivalent rules, I would hold that it was incorrectly decided.

## II.   OTTON, HOWEVER, HAS NOT MET HIS BURDEN TO SHOW THAT *SMITH* IS CLEARLY HARMFUL

Although I conclude that *Smith* was incorrectly decided, I concur in the majority's decision because I agree that Otton has not made the requisite showing of harm sufficient to overcome the rule of stare decisis.

Our cases have identified various kinds of harm that can satisfy this standard. We have found precedent "harmful" because it was incorrect and inequitable. *State v. Berlin*, 133 Wn.2d 541, 548, 947 P.2d 700 (1997) (prior precedent harmful because it overruled well-reasoned precedent without showing that precedent was

15

incorrect and harmful, and because it precluded lesser included offense instructions in too many cases). We have found precedent "harmful" because it created serious policy problems. *State v. Barber*, 170 Wn.2d 854, 865, 248 P.3d 494 (2011) (collecting cases). And precedent is certainly harmful when it infringes a constitutional protection. *E.g.*, *State v. W.R.*, 181 Wn.2d 757, 769, 336 P.3d 1134 (2014) (prior precedent violated due process protections); *Barber*, 170 Wn.2d at 871 (prior precedent offended separation of powers principles). But whatever underlying harm we have recognized, we have always required a *clear* showing of harm and we have placed this burden on the party seeking to overturn precedent. *State v. Kier*, 164 Wn.2d 798, 804-05, 194 P.3d 212 (2008) (citing *State v. Devin*, 158 Wn.2d 157, 168, 142 P.3d 599 (2006) (citing *Stranger Creek*, 77 Wn.2d at 653)).

I agree with the majority that Otton has not met that burden here. To support his argument that *Smith* is harmful, Otton simply asserts that ad hoc "reliability" determinations are inherently subjective and therefore unfair. Suppl. Br. of Pet'r at 12-14. But as the majority points out, these determinations pose no constitutional problems in the context of ER 801(d)(1)(i), majority at 17-18, and Otton offers no evidence that *Smith* has yielded uneven results in Washington courts.

16

CONCLUSION

*Smith*'s case-by-case reliability test conflicts with the plain language of ER 801(d)(1)(i) and the overwhelming majority of relevant precedent from other jurisdictions. I therefore conclude that *Smith* was incorrectly decided. I concur in the decision to adhere to *Smith* and affirm the Court of Appeals, however, because I agree that the petitioner has not met his burden to show that *Smith* is clearly harmful.

Gordon McCloud, J.